**UNITED STATES of America, Appellee,**

v.

**Parakrama KARUNATILEKA, Appellant.**

**No. 86–5135.**

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1987.

Decided June 10, 1987.

John Sheehy, Minneapolis, Minn., for appellant.

Gary Annear, Asst. U.S. Atty., Fargo, N.D., for appellee.

* The Honorable SCOTT O. WRIGHT, United States District Judge for the Western District of Missouri, sitting by designation.

Before ARNOLD, FAGG, Circuit Judges and WRIGHT,* District Judge.

SCOTT O. WRIGHT, District Judge.

Defendant appeals his conviction on all counts of a 14–count indictment alleging mail fraud, wire fraud, filing false insurance claims and interstate transport of fraudulently obtained funds. The criminal charges arise out of two separate transactions in which precious metal coins were never received and defendant filed insurance claims or claims for indemnity to reimburse him for his losses. In essence, appellant contends that the evidence was insufficient for a reasonable juror to conclude beyond a reasonable doubt that appellant was guilty on all 14 counts. For the reasons stated below, we affirm the lower court.

## I. FACTUAL BACKGROUND

### A. *Transaction Number One*

Counts 13 and 14 of the indictments under 18 U.S.C. 1341 arise out of the first transaction. As to this transaction, the evidence that was introduced showed that on September 21, 1983, defendant ordered by telephone six Canadian Maple Leafs, three one-ounce Krugerrands and one quarter-ounce Canadian Maple Leaf for $4,066.00 from Deak-Perera ("Deak"). Defendant sent Deak a check for $4,066.00. On September 27, 1983, Deak sent a confirmation letter that defendant's check had been received and a notice that the coins could be expected on October 17, 1983.

The merchandise was sent by Deak on October 17, 1983, by registered insured mail. Postal records showed that the shipment was received in the Grand Forks, North Dakota Post Office on October 19, 1983, and was dispatched to the University Station Post Office in Grand Forks. It was received by the University Station on October 19, 1983. Shortly thereafter, a yellow notification slip was sent to defendant at his dorm on the University campus.

Evidence was introduced that on October 24, 1983, defendant rented a safety deposit box, giving special instructions to the attendant that entrance was not to be given to the box unless the password "skiing away" was given and a picture I.D. was shown.

On about October 26, 1983, defendant went to the University Station Post Office and asked for the package. A postal clerk informed appellant that the package was picked up a week before. Defendant kept his yellow notification slip, unsigned, as proof that he had a package due. Postal employees testified at trial that a short, dark foreign person came to pick up the package a few days after it was received. This person apparently never signed for the package. While none of the postal employees identified defendant as the person who picked up the package, postal employee Wilbur Finnie did testify that the person who picked up the package was the same person who later came in and asked for it.[1]

Defendant then notified Deak of the loss. Defendant submitted a claim form to Deak which, after an investigation, sent defendant a check on January 31, 1984, for $4,066.00. Deak filed a claim with the post office for the lost metal.

## B. *Transaction Number Two*

Counts 1–12 of the indictment arise out of the second transaction. As to this second transaction, the evidence showed that during the latter part of February, 1985, defendant called Neil De Silva, a good friend of his who was living at 3600 Kinkead, Fort Smith, Arkansas. Defendant told him that he was planning on finding another school and that he wanted to keep his things at De Silva's place. Defendant told De Silva that he was going to mail some precious metal in boxes through the post office.

On March 11, 1985, defendant, based on the advice of Jeffrey Breyer (a dealer of precious metals), went to the East Grand Forks Post Office and mailed two properly wrapped parcels containing precious metals to Fort Smith, Arkansas, registering and insuring them for $25,000.00 each. The parcels each weighed between 4 and 5 pounds.

Also on March 11, 1985, defendant brought two parcels, properly wrapped, to the Grand Forks, North Dakota post office. He insured each parcel for $25,000.00 and stated that they contained precious metals. These two parcels were mailed to defendant, in care of De Silva at De Silva's address in Fort Smith. One package weighed between three and four pounds and the other weighed between seven and eight pounds. Defendant arrived in Fort Smith in the middle of March, but the packages had not arrived.

The packages arrived on March 15, 1985, at the Rogers Avenue station. Postal Clerk Katherine Woodward testified at the trial that she examined the four registered parcels when she received them at the post office to make certain they were not damaged and had not been opened. She testified that she found nothing wrong with them. At the trial Woodward also lifted the 4 boxes that defendant received (Exhibits 1–4) and stated that they were much lighter than the parcels she handled on March 15, 1985. Woodward then testified that she gave the parcels to Tom Moore, the mail carrier, to deliver. Moore testified that he delivered the four packages to defendant at De Silva's residence at approximately 10:30 or 11:00 a.m. on March 15. Moore asked the person answering the apartment door if he was the gentleman whose name was on the packages, and the man shook his head yes. This person then signed the receipts. At trial, Moore identified the defendant as being the person who signed for the packages. At the trial Moore lifted the packages and testified that the packages weighed more when he delivered them.

---

1. Additionally, postal inspector Francis Norman testified that when the defendant came into the post office to inquire about the package, Norman told defendant that he had picked up the package about a week ago, whereupon defendant did not say too much, but merely walked away.

At about 12:00 or 1:00 p.m. on March 15, defendant called the post office and informed them that there was something missing from each of the registered parcels. Defendant was advised to call back later, which he did. Defendant was advised that he would have to come to the post office to file a claim and to bring with him every item the way he received it plus the wrappers and a history of what had been mailed in the packages.

Evidence was introduced that on or about March 16 or 17, a day or two after the packages were delivered, De Silva discovered a box, similar in size to the boxes that defendant had received (entered as Government Exhibits 1–4) on his closet shelf. De Silva asked defendant if he had put it there, to which defendant replied that he had and that De Silva was to leave it there. De Silva further testified that although he did not really examine this box to determine what kind of condition it was in, he did notice that there was weight to the box. De Silva also testified that defendant told him not to tell anyone about the box, not even his parents because they would be worried.

On March 18, 1985, defendant went to the Rogers Postal Station to file a claim. Defendant filled out four claim forms, and showed the station manager some slits in the boxes that looked like sharp knife or razor slits. Defendant stated that he had mailed 320 coins and some silver bars, but had received only a few of each—three Kruggerands and three Maple Leafs plus some silver bars. Defendant told the station manager that the reason he mailed them was because he did not want to risk his life by having them in the car with him. Defendant gave the station manager a list, which he stated was not exactly accurate, of the gold and silver he had mailed in the packages. Defendant never brought in a corrected list. The station manager testified that, based on the information and evidence available, he believed the slits had been made after the packages were delivered.

On April 16, 1985, Postal Inspector Emmett Edwards went to De Silva's house to discuss with defendant his claim. Defendant stated that he mailed parcels from two different post offices to divide up the value. Defendant produced an appraisal from the Gold and Silver Exchange in Grand Forks, dated February 25, 1984, showing the value of the coins ($120,000.00). Defendant told Inspector Edwards that he did not handle the parcels when they were delivered by Moore. According to defendant, he was asleep when Moore arrived with the parcels. Defendant claimed that Moore placed the boxes inside of the apartment and that he did not inspect or lift the boxes at that time. He did sign for them but immediately went back to bed. When he awoke about an hour later, he examined the boxes and discovered that they had been broken into and some of the contents were missing.

Defendant told Inspector Edwards that out of the 320 gold coins and silver bars he had shipped, he only received the silver bars and six gold one-ounce coins (3 one-ounce Canadian Maple Leafs and 3 one-ounce Kruggerands). Defendant stated that one package was completely empty and the other boxes contained the six coins and the silver bars.

Based on an investigation in the following weeks by postal inspectors, it was concluded that none of the postal employees in Memphis, Little Rock or Fort Smith, Arkansas were responsible for the theft. During this period, defendant made constant inquiries about the status of his claim.

On May 8, 1985, defendant's claim was processed and checks totaling $96,946.75 were mailed to defendant. On August 14, 1985, defendant deposited the checks into the First National Bank in Grand Forks and got two savings certificates (one for $25,000.00 and one for $55,000.00). Defendant also used $11,500.00 to purchase an Audi coupe automobile on May 15, 1985.

Postal inspectors continued to investigate, with the investigation centering on defendant as the prime suspect. Postal Inspector David Eichten obtained a search warrant on September 19, 1985, to search defendant's safety deposit box in the First

National Bank in Grand Forks. In the box, Eichten found two 100–ounce silver bars and eight one-ounce gold coins (5 Maple Leafs and 3 Kruggerands).

Eichten obtained a second search warrant to search a residence in Lawrence, Kansas, where defendant was staying. As a result of this search, a 1983 one-ounce gold Canadian Maple Leaf coin was found in a shaving kit in the bedroom of the apartment.

On September 30, 1985, Eighten obtained a third search warrant for a mini-storage unit in Grand Forks that defendant was renting. This search resulted in the finding of a white window envelope bearing the return address of Deak-Perera and an original Postal Service delivery receipt.

Other evidence against defendant included an appraisal done at the government's behest as to the weight of two silver bars and 320 coins. This weight was determined to be 35.346 pounds. When taking only the 320 coins into consideration, box one would weigh 5.381 pounds; box two would weigh 5.143 pounds; box three would weigh 5.460 pounds; and box four would weigh 5.648 pounds. The silver bars were believed to have been in boxes one and three. A silver bar weighs approximately 6½ pounds. The total weight of the coins and a silver bar in box one would be 12.238 pounds, and in box three would be 12.317 pounds. According to postal records, parcel one weighed 7 to 8 pounds, parcel two weighed 4 to 5 pounds, parcel three weighed 3 to 4 pounds, and parcel four weighed 4 to 5 pounds. The total mailing weight of the four registered parcels by postage would have been a minimum of 18 pounds and a maximum of 22 pounds.

## II. DISCUSSION

### A. *Was the evidence sufficient to sustain a conviction as to transaction number one?*

Defendant alleges that the evidence introduced by the government at trial was insufficient to convict defendant under counts 13 and 14 since the government did not show, beyond a reasonable doubt, that defendant received the Deak-Perera coins. We conclude that, as to counts 13 and 14, the evidence introduced was sufficient to present a jury question as to whether defendant was guilty beyond a reasonable doubt.

The standard of review where the sufficiency of the evidence is challenged is that a defendant's conviction must be upheld if, viewing the evidence in the light most favorable to the government, there is substantial evidence to support the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Coronel-Quintana*, 752 F.2d 1284, 1292 (8th Cir.1985); *United States v. Hudson*, 717 F.2d 1211, 1213 (8th Cir.1983). In reviewing the jury's verdict, we give the government the benefit of all inferences that may be drawn from the evidence. *Hudson*, 717 F.2d at 1213; *United States v. Richmond*, 700 F.2d 1183, 1189 (8th Cir.1983); *United States v. Cox*, 580 F.2d 317, 323 (8th Cir. 1978), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979). Moreover, it is unnecessary that the evidence exclude every reasonable hypothesis except guilt; rather, the evidence must simply be sufficient to convince the jury beyond a reasonable doubt that defendant is guilty. *United States v. Bentley*, 706 F.2d 1498, 1508 (8th Cir.1983), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984); *United States v. Richmond*, 700 F.2d at 1189; *United States v. Archambault*, 670 F.2d 800, 801 (8th Cir.1982). Viewing the evidence under these standards, we believe that the evidence was sufficient to support a conviction of mail fraud based upon the Deak transaction.

To begin with, while defendant was not identified by postal employees at trial as the person who picked up the package of coins sent by Deak-Perera, one postal employee, Wilbur Finnie, testified that the person who picked up the package was the same person who later came in and asked for the package. Another postal employee, Francis Norman, testified that while he was not at the post office when the pack-

age was picked up, the defendant was the one who came in to inquire about the package. Norman testified that at the time defendant inquired about the package he, Norman, told the defendant that he had picked it up about a week before, whereupon the defendant walked away without saying too much. Also damaging to defendant was the fact that two days before defendant went to the University Station Post Office, defendant rented a safety deposit box, and gave special instructions to the attendant that no one be allowed entrance to the box unless the password "skiing away" was given and a picture I.D. was shown. Additionally, the government's evidence showed that the 8 coins found in defendant's safety deposit box were similar to the coins sent by Deak-Perera. All told, the question of whether defendant was the person who picked up the Deak-Perera package was, based on this evidence, one of fact that properly rested within the province of the jury, and the jury was free to either believe or disbelieve the testimony of postal employees Wilbur Finnie and Francis Norman. Therefore, defendant's convictions under counts 13 and 14 of the indictment must be affirmed.

B. *Was the evidence sufficient to sustain a conviction as to transaction number two?*

 As to the second transaction, we likewise conclude that the evidence introduced by the government presented a jury question on the issue of whether defendant actually sent the gold and silver that he claimed he did and whether he received the boxes intact.

Perhaps the most damaging evidence offered on this point is the disparity in weights between what defendant alleges he sent in the four parcels and what the parcels actually weighed. According to the testimony of government witnesses, the weight of two silver bars and 320 coins would have an approximate weight of 35.-346 pounds. The total mailing weight of the four registered parcels by postage would have been a minimum of 18 pounds and a maximum of 22 pounds.

Also damaging to defendant was the testimony of postal employees who testified that the boxes were intact when they left the Rogers Avenue station and were delivered to defendant. The question of whether defendant or the postal employees were to be believed was within the province of the jury and cannot be disturbed by this Court.

Thus, looking at all of the evidence, we believe that this evidence, although circumstantial, presented a jury question on whether defendant, as to the second transaction, devised a scheme to defraud and did in fact defraud the United States Post Office.

Accordingly, we hold that the evidence was sufficient to raise a jury question as to whether defendant was guilty beyond a reasonable doubt as to counts 1–12 and as to counts 13 and 14. Therefore, we affirm defendant's convictions on all counts.