**UNITED STATES of America, Appellee,**

v.

**Dennis L. LAND, Appellant.**

**No. 88–2480.**

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1989.

Decided June 13, 1989.

Dennis L. Land, Marquette, Neb., pro se.

Steven A. Russell, Asst. U.S. Atty., Lincoln, Neb., for appellee.

Before ARNOLD, BOWMAN and MAGILL, Circuit Judges.

ARNOLD, Circuit Judge.

Dennis L. Land, a farmer in Marquette, Nebraska, appeals pro se from his conviction on three counts of making false statements in violation of 18 U.S.C. § 1001. On appeal, Land argues that the United States did not have jurisdiction over the "property" where the alleged crimes were committed. Amicus[1] argues that the evidence was insufficient to support Land's convictions, as the criminal-intent and material-statement elements required by the statute were lacking, and that the District Court[2] erred by allowing individual jurors to question witnesses during trial.

I.

Land's convictions arise out of his application for crop-insurance coverage and claims for indemnity from the Federal Crop Insurance Corporation (FCIC), a branch of the Department of Agriculture, in 1983 and 1984. An application for crop insurance requires the applicant to list the number of acres to be insured and whether these crops were planted by a deadline determined by FCIC each planting season. Count One of the indictment alleged that Land falsely stated that planting had been completed on a particular tract on June 3, 1983, two days before the planting dead-

line. Counts Two and Three alleged that Land underreported the total amount of production from his 1984 corn crop in his claims for indemnity under his 1984 FCIC insurance policy.

At trial it was undisputed that Land planted a portion of his 1983 corn crop after the deadline and that no late-planting agreement was in effect between Land and FCIC. Land testified that all of his dealings with FCIC were with Melvin Sperling (deceased at the time of trial), an FCIC adjuster. Tr. 688. Land also testified that he executed the acreage report for his 1983 insurance in blank and that he told Sperling that part of his planting was not completed by the deadline, but that Sperling told him not to worry and that he would take care of it. Tr. 698–99.

Sperling's wife, Lola, an FCIC agent, testified that she was Land's crop-insurance agent in 1983 and 1984, and that Land had come to her office in June 1983 and provided her with all of the information for his crop insurance. Tr. 134–36. Lola Sperling further testified that she observed Land sign the crop-acreage report indicating that planting had been completed on the tract of land at issue on June 3, 1983. Tr. 140–41. Testimony revealed that at no time during the investigation of Land's 1983 application for crop insurance did Land claim to have relied on Melvin Sperling's alleged representations regarding crop insurance. Tr. 295–96.

Arland Pulley, Area Claims Specialist for FCIC, testified that he and an FCIC adjuster visited Land in early 1985 to prepare claim forms and investigate Land's 1984 claim for corn crop loss. Tr. 340. Testimony of the adjuster, Donald Schmeekle, revealed that Pulley had instructed Schmeekle not to sign the claim forms because of the discrepancies between his appraisal of Land's 1984 corn production and Land's claim of loss. Tr. 539–40.

---

**1.** The lawyer who represented Land in the District Court no longer represents him. He (the lawyer) has filed a brief in this Court at our request. We assume for purposes of this appeal, without deciding the point, that we may properly consider arguments made by the amicus.

**2.** The Hon. Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska.

During trial, after each witness had been questioned by the attorneys, the Court asked if the jurors had any questions they would like the Court to ask the witness. Juror questions would first be directed to the Court and then repeated by the Court to the witness. At no time did defense counsel object to this procedure or to any of the questions asked by the jurors.

The jury found Land guilty on all three counts of the indictment. Land was sentenced to three concurrent five-year terms of imprisonment, with all but sixty days suspended. Land was also placed on four years probation and required to perform 200 hours of community service and pay restitution in the amount of $47,799.18 on Count One. This appeal followed.

## II.

■ Land's argument that the United States lacks jurisdiction over the alleged crimes because they were not committed on federal land is frivolous. The alleged false statements were made to FCIC, an agency of the United States. The nature of the real estate to which the statements related is irrelevant.

■ Amicus argues that allowing jurors to question witnesses was improper, and that Land was prejudiced by some of the juror questions. Because there was no objection at trial, this Court is limited to deciding whether the procedure involved "plain errors or defects affecting substantial rights." Fed.R.Crim.P. 52(b). We see no plain error in this case.

In *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 516 (4th Cir. 1985), the Fourth Circuit held that even though "the practice of juror questioning is fraught with dangers which can undermine the orderly progress of the trial to verdict," it is still a matter within the discretion of the trial court. In *DeBenedetto*, the Court found no reversible error in the use of juror questions because of defense counsel's failure to object to the procedure and the lack of prejudice. *Id.* at 517.

In another juror-questioning case, the Fourth Circuit advised that "the district court should require jurors to submit questions in writing, without disclosing the question to other jurors, whereupon the court may pose the question in its original or restated form upon ruling the question or the substance of the question proper." *United States v. Polowichak*, 783 F.2d 410, 413 (4th Cir.1986) (no prejudice resulted from juror's stating question within the hearing of other jurors before it was ruled upon by the court). Allowing jurors to state their questions within the hearing of other jurors raises the problem that

> not only the questioning juror but the other jurors are likely to retain whatever mind-set has been generated by the question, leaving the court and counsel to ponder, under the stress of trial, how much influence a *juror* question, answered or unanswered, may have had on the perceptions of the jury as a whole.

*DeBenedetto*, 754 F.2d at 516.

Although the procedure used in the instant case is somewhat troubling (allowing juror questions to be stated out loud before the Court had ruled them proper), we do not believe Land was prejudiced as a result. The juror questions related to the procedures used and circumstances surrounding the planting and harvesting of corn, and the nature and amount of corn losses and indemnity claims filed in 1983 and 1984. Tr. 122–23, 176–79, 217–18, 250–51, 405–06, 463–65, 484–85, 621–22, 670–72, 767–70, 780–81. Amicus asserts that these questions gave the appearance that the jurors were improperly comparing Land with other farmers. Amicus Br. 18. Amicus's speculation as to the mind-set of the jurors who asked and heard questions is just that —speculation.

The remaining issues raised by amicus are without merit. First, amicus argues the evidence was insufficient to support the jury's finding of guilt with respect to Count One because Land did not have the requisite intent to make a false statement. On review, this Court must uphold the conviction if, viewing the evidence in a light most favorable to the government, there is substantial evidence to support the jury's verdict. *United States v. Karunatileka,*

820 F.2d 961, 965 (8th Cir.1987). In light of the testimony discussed above contradicting Land's version of the events surrounding the filing of his 1983 crop report, we believe there is sufficient evidence to support the jury verdict.

Finally, amicus asserts that Land's statements on his 1984 claim for indemnity forms were not material and could not have affected FCIC's decision to pay his claims, because Pulley had instructed the adjuster in advance of the investigation not to sign Land's claim forms. This analysis is flawed. In the context of section 1001, a material statement is one which is *capable* of influencing an agency's governmental functions, regardless of what the government agent knew at the time the statement was made. *United States v. Whitaker,* 848 F.2d 914, 916 (8th Cir.1988). Here, it is clear that Land's underreporting of his 1984 corn crop was capable of influencing FCIC's decision to approve his claims for indemnity.

Affirmed.