**UNITED STATES of America, Appellee,**

v.

**Wayne C. JOHNSON, Appellant.**

**No. 89–2467WM.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1990.

Decided Sept. 11, 1990.

Rehearing and Rehearing En Banc
Denied Oct. 31, 1990.

Dennis Owens, Kansas City, Mo., for appellant.

Matt J. Whitworth, Kansas City, Mo., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Wayne C. Johnson appeals his convictions relating to his operation of a "chop shop" for stolen and wrecked automobiles. In this appeal he advances constitutional error due to the district court's [1] allowance of juror interrogation of witnesses and evidentiary error due to the admission of transcripts of secretly taped conversations between himself and a government informant. Following prior decisions of this court and finding no error from the trial, we affirm.

I. BACKGROUND

The FBI and the Missouri State Highway Patrol began investigating Johnson in Sep-

---

1. The Honorable Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri.

tember 1987 with the aid of a government informant, Steven Gilmore, who had worked with Johnson for a number of years and who had received a grant of immunity in exchange for his cooperation. The testimony of Gilmore and of special FBI agent Loren McKee revealed that Johnson conspired with others organized to direct the theft of automobiles and their subsequent re-assembly with salvaged automobiles. The vehicle identification numbers (VINS) of the wrecked autos were substituted in the stolen ones; the vehicles were then retitled and sold. The idea was simply to make a large profit by rebuilding the wrecked vehicles (bought at a low cost) with parts from the stolen ones.

The scheme, of course, was illegal. Johnson's crimes, however, were not the thefts themselves, but follow therefrom by violation of various general provisions of title 18 of the United States Code and other specific provisions relating to tampering with VINs. In three of four counts, the indictment alleged that Johnson, along with others, had violated sections 2321 (trafficking in a vehicle with an altered VIN), 511 (altering a VIN), 371 (conspiracy to defraud the United States), and 2 (being a principal in such activities). The fourth count alleged that Johnson had violated section 2312 (transporting a stolen vehicle in interstate commerce).

While as many as one hundred or more stolen vehicles may have been involved in Johnson's efforts, the government relied on one particular theft to make its case—tracing the VIN number through the chop shop operation. The details of the evidence on that point are not germane to Johnson's appeal, and we do not discuss them.

The manner of presentation of some of the evidence, on the other hand, is germane and is the greater part of Johnson's appeal. Following a practice used before, the district court permitted the jury to interrogate the witnesses live on the stand. The jurors were allowed to posit questions aloud which had not been submitted to the court, but were simply ruled on when asked. Any objections were apparently made at sidebar out of hearing of the jury. The jurors' questions were allowed only after counsel for both parties had completed their examinations. Counsel were permitted to reexamine the witness after the jurors' questions, if any. Of the eleven witnesses called in this case, seven were asked questions by one or more of the jurors. A few of those questions were allowed over the objections of Johnson.

The case proceeded to deliberation by the jury which returned verdicts of guilty on all counts against Johnson. After motions for a new trial and for a judgment of acquittal, the district court upheld the verdicts, except with respect to the transportation charge under 18 U.S.C. § 2312 (1988). The court concluded that the evidence was insufficient as a matter of law to show that Johnson had caused the particular vehicle in this case to be transported in interstate commerce. The evidence, according to the court, showed at most "fortuitous" interstate transportation, which was not enough to sustain the verdict. Johnson brings this appeal arguing error in the juror interrogation of witnesses and the admission of certain evidence. We treat only the former question closely.

## II. DISCUSSION

The district court's use of juror interrogation of witnesses has twice been before this court and twice upheld. *United States v. Lewin,* 900 F.2d 145 (8th Cir.1990); *United States v. Johnson,* 892 F.2d 707 (8th Cir.1989). A third but earlier case, *United States v. Land,* 877 F.2d 17 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 243, 107 L.Ed.2d 194 (1989), from another district court upheld the use of jury questioning and was the precedent used in *Lewin* and *Johnson.*

*Land* first held that, absent a contemporaneous objection, jury questioning, though a "somewhat troubling" procedure as implemented (jurors stated their questions, as here, from the box without prior consideration by the court), could only be reviewed for plain error which was absent in that

case. *Land*, 877 F.2d at 19.[2] Next, *Johnson* followed *Land*'s use of plain error review because, there too, no objection was made at trial. *Johnson*, 892 F.2d at 710. The majority opinion, authored by visiting Judge Sneed, went on to say that it was expressing "no opinion on the appearance and propriety of juror questioning in general...." *Id.* Nevertheless, Chief Judge Lay wrote a concurring opinion, joined by Judge McMillian, addressing the serious (and perhaps constitutional) questions arising from the practice of jury interrogation of witnesses, particularly the defendant, in criminal cases. The concurrence concluded that, contrary to *Land*, the practice was "fraught with danger and borders on a finding of prejudice per se," but because *Land* was precedent, the panel was obliged to follow it. *Johnson*, 892 F.2d at 715 (Lay, C.J., concurring, joined by McMillian, J.). Lastly and most recently, *Lewin*, authored by Judge McMillian, also concluded that *Land* was controlling precedent which prevented the court from finding plain error *per se* in jury interrogation and allowed review only for abuse of discretion by the trial court. *Lewin*, 900 F.2d at 147. In *Lewin*, six questions had been asked by the jurors and only four allowed by the district court. The opinion detailed the nature of each question and found no abuse. *Id.* at 147–48. Judge McMillian reiterated his concerns as expressed in Chief Judge Lay's concurrence in *Johnson* that jury interrogation was a perilous path. *Id.* at 147.

■ Taking those cases (all of which were criminal appeals) together, they establish the precedent under which we must examine this case. Here Johnson made trial objections to some specific jury questions, hence our review can be more heightened than for plain error, unlike in *Land*. While this was also the apparent difference between the facts of *Land* and *Lewin*, the opinion in *Lewin* did not reveal whether its review for abuse of discretion was because

contemporaneous objections had been made to the jury questions or not. Nevertheless, we conclude that that is necessarily the appropriate standard where a trial objection has been made.

Regarding the admission of evidence, without an objection one is entitled only to plain error review; with an objection one is entitled to review that determines if the admission was an abuse of discretion. *United States v. Roenigk*, 810 F.2d 809, 815 (8th Cir.1987) (citations omitted). Thus, for those jury questions that were asked and answered without objection, we have examined the record for plain error; for those asked and answered over Johnson's objections, we have examined the record to determine if the district court abused its discretion. *See United States v. Nivica*, 887 F.2d 1110, 1123 (1st Cir.1989) (denial of defendant's request to allow jury interrogation within discretion of district court but generally disparaging of the practice), *cert. denied*, —— U.S. ——, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990); *United States v. Callahan*, 588 F.2d 1078, 1086 n. 2 (5th Cir.) (in case where single question was submitted to trial court by juror and allowed to be asked, court of appeals said "proper handling of juror questions [was] a matter within the discretion of the trial judge.") (citations omitted), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979).

■ We have reviewed the trial transcript and considered the nature of the testimony of each witness and the jurors' questions. The record does not reveal that the jury's neutrality was affected or its judgment altered by the questions asked. The jury questions were asked only after counsel had completed their examinations, the district court considered the questions before allowing an answer to be given, and counsel were allowed to re-examine witnesses after the jury questions.[3] We do

---

**2.** *Land* relied on a Fourth Circuit civil case that generally criticized the practice but upheld it on the facts as an exercise of discretion by the district court, and found "no bias" in any of the questions and "detect[ing] no prejudice to any

party". *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 515–17 (4th Cir.1985).

**3.** Though not determinative to our decision, we note that the government has indicated both in oral argument and its brief that to its knowledge the district court has ended its practice of

not believe the practice resulted in any prejudice to Johnson.[4] The district court is the first and best defense against such prejudice, and the record reflects the court's success. Thus, we find no plain error in any of the questions asked by the jury, nor do we find an abuse of discretion in those questions allowed over Johnson's objections.

Finally, we have reviewed Johnson's claim that evidence was improperly received by the jury in the form of a transcript of a taped conversation he had with the government informant, Gilmore. We find no abuse of the trial court's broad discretion in this matter.

## III. CONCLUSION

Finding no abuse of discretion by the trial court with respect to Johnson's arguments advanced on juror interrogation and evidentiary error, we affirm his convictions.

---

interrogation of witnesses by jurors aloud from the box.

4. Only one question was close. One juror asked special FBI agent McKee about other crimes of Johnson.

> [Juror]: He [McKee] mentioned that they recovered some cars in his testimony. And I'm just curious what cars those were, if it pertains to the defendants. Or is it somebody else—

Trial Transcript, Volume 2 at 49.
At this point a bench conference was held wherein counsel for Johnson objected to this question as prejudicial. Trial Transcript, Volume 2 at 49–51. The government's response was that this question could be asked because it was probative of Johnson's intent. After the bench conference the testimony went as follows.

> THE COURT: Okay. The question was you said something about that you recovered other cars?
> THE WITNESS: Yes, Your Honor.
> THE COURT: All right, you can answer that.
> THE WITNESS: As a result of—
> THE COURT: Pertaining to the defendant Johnson.

> THE WITNESS: Yes, we have recovered other cars pertaining to Mr. Johnson. Is that what you're asking?
> THE COURT: Right.
> THE WITNESS: Right.
> THE COURT: How ma[n]y?
> THE WITNESS: Umm, two or three. At most four, I think.
> THE COURT: Okay. Now does that answer your question?
> [JUROR]: Were they stolen, or do you know? Or can you tell?
> THE COURT: Well—do you know that?
> THE WITNESS: Yes. They—we have verified some of them stolen. Yes.
> [JUROR]: Okay.
> THE COURT: All right.

Trial Transcript, Volume 2 at 51.
Taken alone, this testimony appears prejudicial. Johnson was not being tried for the "chopping" of any vehicles other than the Chevrolet Blazer from the indictment. But considering this exchange in light of the earlier testimony of McKee and in light of all the evidence at trial clearly implicating Johnson, we are satisfied that no more than harmless error has occurred.