**UNITED STATES of America, Appellee,**

v.

**Mary Lee HARRISON, Appellant.**

No. 92–1350.

United States Court of Appeals,
Eighth Circuit.

Submitted June 9, 1992.

Decided July 16, 1992.

Robert L. Depper, Jr., El Dorado, Ark., argued, for appellant.

Mark W. Webb, Fort Smith, argued (J. Michael Fitzhugh and Mark W. Webb, on the brief), for appellee.

Before BOWMAN, LOKEN, Circuit Judges, and HUNTER,* Senior District Judge.

BOWMAN, Circuit Judge.

Mary Lee Harrison appeals her prison sentence of fifteen months imposed by the District Court[1] after she pleaded guilty to an embezzlement charge. We affirm.

The government charged Harrison, formerly an accounts payable manager of the Ouachita County Hospital Credit Union, with embezzling approximately $92,675 from the credit union from about April 1987 to October 1990, in violation of 18 U.S.C. § 657. Harrison pleaded guilty. To the base offense level of 4, the presentence report ("PSR") added eight levels under U.S.S.G. § 2B1.1(b)(1)(I)[2] for the dollar loss, two levels under U.S.S.G. § 2B1.1(b)(5) for more than minimal planning, and two levels under U.S.S.G. § 3B1.3 for abusing a position of trust and using a special skill to facilitate the offense. The PSR then subtracted two points for acceptance of responsibility, U.S.S.G. § 3E1.1, yielding a total offense level of fourteen, and calculated a criminal history category of I. The resulting sentencing range was fifteen to twenty-one months.

The PSR reported that Harrison, age sixty-four, and her late husband had a twenty-eight-year-old daughter, Susan, who was separated from her husband. According to the PSR, Harrison and her husband adopted Susan's daughter, Tina, before Harrison's husband died (of self-inflicted gunshot wounds) in 1983. Tina, age nine, and Susan both lived with Harrison. According to Harrison, Susan was a licensed practical nurse at Southern Arkansas University Tech and Harrison's "daughters" were "very supportive" of her. The PSR reported that Harrison presently worked part-time at three jobs. *United States v.*

*Harrison,* No. 91–10016–01, Presentence Report, ¶¶ 43–44, 50 (W.D. Ark., revised Dec. 30, 1991) [hereinafter "PSR"].

At sentencing in January 1992, defense counsel requested that the court consider a downward departure on the basis of Harrison's age, arguing that imprisoning Harrison at her age would have a greater impact on her than on a younger person. Transcript of Sentencing, at 16 [hereinafter "Tr."] Counsel argued the "most compelling" reason for a downward departure was that Tina would have to live with Susan if Harrison were imprisoned as no one else lived with Harrison, and no other close family member could care for Tina. *Id.* Counsel explained that Harrison had adopted Tina due to Susan's substance abuse and her "lifestyle" which involved "going out frequently." *Id.* at 17. Counsel stated that those conditions still existed and that Tina could be damaged by living with Susan. Counsel also urged that Harrison had part-time employment and social security income, and asked the court to "show compassion" and to consider the societal interest in allowing Tina to be raised in a "wholesome home." *Id.* at 18.

The court expressed sympathy, but after reviewing the language on grounds for departure in U.S.S.G. § 5K2.0, p.s., stated, "I construe this that I'm without authority to [depart], under the facts that I determine that is [sic] included in this report." *Tr.* at 29. After further discussion with counsel, the court noted that family ties and responsibilities are not ordinarily relevant in determining whether a sentence should be outside the Guidelines, U.S.S.G. § 5H1.6, p.s., and are relevant only in determining the length and conditions of supervision during supervised release or probation. Counsel contended that the policy statement on family ties supported a downward

---

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Oren Harris, Senior United States District Judge for the Western District of Arkansas.

2. Harrison was sentenced on January 31, 1992. Therefore her appeal is governed by the guidelines in effect on that date, which are contained in the November 1, 1991 version of the *Guidelines Manual. United States v. Lincoln,* 956 F.2d 1465, 1468 n. 3 (8th Cir.1992) (holding guidelines in effect at date of sentencing control). All guidelines cited are contained in the November 1, 1991 version of the *Guidelines Manual.*

departure. The court responded, "Well, I think you've made it very plain. Plus the fact that this report contains the embezzlement over a period of years." *Tr.* at 24–25. The court remarked that the embezzlement was "most unreasonable," *id.* at 25, and that it did not understand how Harrison had embezzled for so long. After further discussion during which the court again expressed concern over Harrison's conduct and stated that it should not overlook that conduct, the court concluded, "I think I could not, with this record we've got, the period of time and the money that has been embezzled in this matter, let it go at that." *Id.* at 27. The court denied the request for a downward departure.

Harrison stated during allocution that Susan was not competent to take care of Tina "with her drinking and carousing around and dope." *Id.* at 28. Harrison stated further that Tina had told her that if something happened to Harrison, Tina wanted to live with " 'Uncle John' "[3] and would not want to live with " 'mama and her drinking.' " *Id.* at 29. The court sentenced Harrison the shortest prison term (fifteen months) authorized by the guideline sentencing range, plus three years on supervised release. *Id.* at 30. The court later issued written findings of fact acknowledging that Harrison had requested a downward departure based on her responsibility to care for Tina, and that Harrison had stated Susan had a severe alcohol abuse problem and was unable to care for Tina. The court stated in its findings that section 5H1.6 had addressed those matters, that Harrison's relationship with Tina did not raise mitigating circumstances justifying a downward departure, and that Harrison's "inability to care for [Tina] during [Harrison's] imprisonment [was] not a mitigating circumstance not adequately taken into account by the sentencing guidelines." *United States v. Harrison*, No. 91–10016-01, Finding of Fact at 2 (W.D.Ark., filed Feb. 13, 1992). 785 F.Supp. 114. In this timely appeal, Harrison argues that the district court mistakenly believed it lacked the authority to depart downward. The government argues that the court merely believed the departure was not justified under the facts of this case.

■ Title 18 U.S.C. § 3553(b) (1988) states in relevant part that a sentencing court may depart from the applicable guideline range if the court finds a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *Id.; see* U.S.S.G. § 5K2.0 (effectuating statutory command). The court's repeated references to the extent of Harrison's embezzlement suggest the court exercised its discretion not to depart downward. On the other hand, the court's statements after reviewing sections 5K2.0 and 5H1.6, as well as its written findings, suggest the court believed it lacked authority to depart. If the District Court's refusal to depart was an exercise of discretion, then the court's ruling is not reviewable. *See United States v. Johnson*, 908 F.2d 396, 399 (8th Cir.1990) (where district court found that defendant's case was not atypical and that her family ties with daughter were not a "reasonable basis for downward departure," court did not believe it lacked authority to depart and its decision was not reviewable); *United States v. Evidente*, 894 F.2d 1000, 1004–05 (8th Cir.), *cert. denied*, 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990) (refusals to depart downward are nonreviewable where the district court knew it had the authority to depart but exercised its discretion by sentencing the defendant within the guideline range).

■ If, however, the District Court concluded it lacked authority to depart, then this court has jurisdiction to confirm or reject the district court's conclusion. *Evidente*, 894 F.2d at 1005. In a recent case in which a panel of this court was uncertain as to why a district court declined to depart downward, the panel concluded it did not need to resolve the issue because it determined the district court lacked authority to depart. *United States v. Davila*, 964 F.2d 778, 785–86 (8th Cir.1992). Similarly, we

---

3. "Uncle John" is not further identified.

hold the District Court here lacked authority to depart. (We also are inclined to think that this was the District Court's position.)

■ First, Harrison's age alone was not a permissible basis for departure. "Age ... is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm...." U.S.S.G. § 5H1.1, p.s. Thus, a district court may consider age "in an extraordinary case." *United States v. Lopez*, 938 F.2d 1293, 1296 (D.C.Cir.1991). The PSR reported that Harrison described her health as "good," PSR, ¶ 46, and she has not otherwise shown her age to be an extraordinary circumstance. *See, e.g., United States v. Guajardo*, 950 F.2d 203, 208 (5th Cir.1991) (defendant's age of fifty-five not extraordinary circumstance justifying downward departure even where defendant had cancer in remission, high blood pressure, fused right ankle, amputated left leg, and drug dependency), *cert. denied*, —— U.S. ——, 112 S.Ct. 1773, 118 L.Ed.2d 432 (1992). Similarly, Harrison's part-time employment was not a permissible basis for a downward departure when she otherwise showed no atypical circumstances. *See* U.S.S.G. § 5H1.5, p.s. (employment record not ordinarily relevant in determining departures); *cf. United States v. Big Crow*, 898 F.2d 1326, 1332 (8th Cir.1990) (twenty-three-year old's "excellent employment history, solid community ties, and consistent efforts to lead a decent life in a difficult environment" were sufficient grounds for departure for one-time assault).

■ Extraordinary family circumstances, *i.e.*, outside the " 'heartland' of cases" the Guidelines were intended to cover, can be the basis for a downward departure. *United States v. Shortt*, 919 F.2d 1325, 1328 (8th Cir.1990) (quoting U.S.S.G., Ch. 1, Pt. A 4(b), intro. comment.). Many circuit courts have held, however, that a defendant's status as a single parent is not an extraordinary circumstance warranting departure. *See United States v. Chestna*, 962 F.2d 103, 106–07 (1st Cir.1992) (per

curiam) & cases cited therein; *United States v. Mogel*, 956 F.2d 1555, 1565 (11th Cir.1992) & cases cited therein; *United States v. Headley*, 923 F.2d 1079, 1082 (3rd Cir.1991) (holding single mother of five children ranging from age 11 months to 11 years did not present extraordinary circumstance; observing that every court to consider departure based on effect that imprisoning a single parent would have on minor children has found circumstances not extraordinary); *Johnson*, 908 F.2d at 399 (holding that court of appeals lacked authority to review district court's discretionary decision not to depart based on family ties, but stating that defendant's "situation as a single mother of an infant was adequately considered by the ... Commission and thus, 18 U.S.C. 3553(b) is not applicable to this case.").

The Fourth Circuit has stated that a sole custodial parent is not rare today and that when the custodial parent is imprisoned, the other parent often may be unable or unwilling to care for the children, so that the children must live with relatives, friends, or in foster homes. *United States v. Brand*, 907 F.2d 31, 33 (4th Cir.) (reversing departure that was based on fact that imprisoning defendant would cause defendant's two young children to be separated and placed with " 'blood strangers' "), *cert. denied*, —— U.S. ——, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990); *cf. United States v. Johnson*, 964 F.2d 124, 129 (2d Cir.1992) (approving downward departure where defendant "was solely responsible for the upbringing of her three young children, including an infant, and of the young child of her institutionalized daughter;" court characterizes defendant's parental responsibilities as "extraordinary."); *United States v. Alba*, 933 F.2d 1117, 1122–24 (2d Cir.1991) (approving downward departure based on defendant's support of wife, two minor daughters, a disabled father and paternal grandmother, and defendant's hardworking nature, but reversing and remanding because court improperly relied on sentence disparity between codefendants); *United States v. Pena*, 930 F.2d 1486, 1494–95 (10th Cir.1991) (affirming downward departure where defendant supported infant and

minor daughter with infant, and where offense was single act of aberrant behavior).

We are unaware of any reported case with facts identical to those in this case, *i.e.*, where the minor child of the single parent facing imprisonment allegedly would be cared for by an adult who allegedly abuses chemical substances or alcohol and "goes out frequently." We also note that notwithstanding the circuit courts' pronouncements that single parenthood is not an extraordinary circumstance, a number of district courts have departed downward in cases involving single parents with child care responsibilities where other mitigating factors were involved. *See United States v. Newell*, 790 F.Supp. 1063, 1064 (E.D.Wash.1992) (defendant was mother of six children, some of whom had school and social problems, and children would likely be placed in foster care and separated upon defendant's incarceration); *United States v. Gerard*, 782 F.Supp. 913, 914–15 (S.D.N.Y.1992) (defendant was sole care provider for two teenage children, voluntarily attempted to make restitution prior to investigation, and assisted in investigation); *United States v. Handy*, 752 F.Supp. 561, 564 (E.D.N.Y.1990) (defendant was single mother of three teenage children, was gainfully employed for 13 years, and promising futures of two older children would be threatened by prolonged incarceration of mother); *United States v. Mills*, 2 Fed. Sent.R. 173, 174–75, 1990 WL 8081 (S.D.N.Y. Jan. 17, 1990) (defendant was only responsible adult to care for teenage daughter and two young grandchildren, defendant had peripheral role in offense, and defendant had had long period of "crime-free conduct"); *United States v. Gonzales*, 2 Fed.Sent.R. 81, 83 (S.D.N.Y. July 26, 1989) (defendant mother had peripheral involvement in offense, father was in prison, and defendant doubted relatives could effectively care for three young children).

We are satisfied that on the showing made to the District Court, this case does not present extraordinary circumstances.[4] As the court therefore lacked authority to depart from the guideline range, the sentence imposed is affirmed.

---

**4.** We note that the remarks of defense counsel and Harrison at sentencing are the only evidence that Susan abuses substances and "goes out frequently," and that Tina would live with Susan; the PSR is silent on those matters. Although counsel referred at sentencing to "previous correspondence" to the government and to the probation officer regarding the requested downward departure, Tr. at 15, that correspondence was not included in the record on appeal.