**UNITED STATES of America, Appellee/Cross–Appellant,**

v.

**James P. GROENE, Appellant/Cross–Appellee.**

**Nos. 92–3235, 92–3332.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1993.

Decided July 13, 1993.

---

James Martin Davis, Omaha, NE, argued, for appellant.

Steven Arthur Russell, Asst. U.S. Atty., Lincoln, NE, argued, for appellee.

Before LOKEN, Circuit Judge, ROSS, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In 1991, James Groene, a chiropractor in Schuyler, Nebraska, was indicted on four counts of failure to pay taxes (for 1984, 1985, 1986, and 1987). A year later, after a 10–day trial and three days of deliberation, a jury found Dr. Groene guilty on all counts.

The trial court subsequently sentenced Dr. Groene to 312 days of confinement in the county jail, to be served under conditions allowing work release, followed by 61 weekends of confined community service at a nursing care center; five years' probation; a fine of $12,000; and payment of restitution in the amount of $115,757.

Dr. Groene challenges his conviction and makes one claim on appeal, namely, that his right to a fair trial was irretrievably compromised by the trial court's practice of allowing jurors to question witnesses. We affirm the trial court on that issue and therefore uphold Dr. Groene's conviction.

The government raises one claim in its cross-appeal, namely, that the trial court abused its discretion in departing from the federal sentencing guidelines by imposing local confinement allowing work release, community service, and probation instead of imprisonment in a federal facility. We reverse

the trial court on that issue and remand the case for resentencing.

## I.

The trial court in this case allowed jurors to pose their questions aloud. The trial court then either directed the witness to answer, restated the question and directed the witness to answer, or called for a bench conference. Objections were made at the bench conference. Of 29 questions posed by jurors, the trial court allowed 24 to be answered. The jurors were not permitted to ask any questions of Dr. Groene when he testified.

Dr. Groene objected repeatedly to the procedure but did not make any specific evidentiary objection to any particular question. In cases where counsel has objected to some questions from jurors but not others, the court has reviewed the objected-to questions for abuse of discretion (even where the basis of the objection was an evidentiary ground rather than juror questioning *per se* ) and the unobjected-to questions for plain error. *See, e.g., United States v. Johnson,* 914 F.2d 136, 138 (8th Cir.1990). (The government evidently believes that an abuse-of-discretion standard controls in this case.) Our cases seem to indicate, however, that when the procedure itself is the only basis for objection, the critical inquiry is whether prejudice has resulted from its use. *See, e.g., United States v. Gray,* 897 F.2d 1428, 1429–30 (8th Cir.1990), and *United States v. Land,* 877 F.2d 17, 19 (8th Cir.1989), *cert. denied,* 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 194 (1989).

▮ The use of the procedure itself is not plain error (prejudicial *per se* ). *See, e.g., United States v. Lewin,* 900 F.2d 145, 147 (8th Cir.1990); *see also United States v. Gray,* 897 F.2d at 1429. Various panels of this circuit, nonetheless, have expressed considerable uneasiness about the practice, especially where, as in this case, the individual jurors posit questions within the hearing of the whole jury. *See, e.g., United States v. Welliver,* 976 F.2d 1148, 1154–55 (8th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993); *United States v. Lewin,* 900 F.2d at 147–48; and *United*

States v. Land,* 877 F.2d at 19; *see also United States v. Gray,* 897 F.2d at 1429.

The reasons given for being skeptical of the procedure employed here are that juror questioning may tend to transform jurors from neutral fact finders into advocates, that the process of formulating questions may precipitate prematurely the deliberation phase of the trial, that jurors may weigh more heavily the answers to questions from each other than the answers to questions from counsel, that jurors may ask questions about legally irrelevant and legally inadmissible evidence, and that an objecting party risks alienating the jury. *See, e.g., DeBenedetto v. Goodyear Tire and Rubber Co.,* 754 F.2d 512, 515–17 (4th Cir.1985) (cited repeatedly by Eighth Circuit panels considering this issue).

▮ In this case, Dr. Groene raises all of those arguments. The government's basic response is that in the context of a 10–day trial, the questions at issue were relatively innocuous, since there were so few of them relative to the length of the trial, and since they elicited only clarifications of previous testimony, cumulative evidence, or evidence that supported Dr. Groene's theory of defense.

▮ After reading the trial transcript, we agree with the government. We believe, however, that if juror questions are allowed, the trial court should carefully weigh using a procedure that requires those questions to be submitted in writing or out of the hearing of (and without discussion with) other jurors, since the practice employed here seems to us to carry serious risks of prejudice to the defendant and even, in a proper case, to the government. *See, e.g., United States v. Welliver,* 976 F.2d at 1154–55; *United States v. Lewin,* 900 F.2d at 147–48; and *United States v. Gray,* 897 F.2d at 1429–30 n. 1; *see also United States v. Polowichak,* 783 F.2d 410, 413 (4th Cir.1986), and *DeBenedetto,* 754 F.2d at 516.

## II.

▮ The trial court found at the sentencing hearing that the applicable guideline

range for Dr. Groene's offenses was 12 to 18 months. Neither probation nor a "split sentence" of confinement and confined community service is available under the guidelines applicable to Dr. Groene. *See* U.S.S.G. § 5B1.1(b); § 5C1.1(f); and § 5C1.1(f), comment 8. Nonetheless, the trial court made what it characterized as a "lateral departure" and imposed what it considered to be "the equivalent of 15 months in prison, but accomplished in order to make [Dr. Groene's] special services available to persons, particularly elderly persons and children, within the small community of Schuyler, Nebraska, a contingency the Sentencing Commission was unable to take adequately into account, and to make restitution to the government more certain and quicker." The trial court imposed a sentence of 312 days (about 10½ months) of confinement in the county jail, allowing for work release every weekday, followed by 61 consecutive weekends of confined community service at a nursing care center (122 days, or about three months), plus five years' probation, a $12,000 fine, and $115,757 in restitution.

This circuit has adopted a three-step test for reviewing a trial court's departure from the guidelines. "First, as a question of law, [the appeals court] determine[s] whether the circumstances on which the district court based its decision to depart are [legally] sufficient to justify a departure. Second, [the appeals court] review[s] whether the circumstances relied on actually exist. Whether the circumstances exist is a factual determination that can be set aside only for clear error. Finally, with deference to the district court, [the appeals court] review[s] the reasonableness of the degree of departure." *United States v. Sands,* 908 F.2d 304, 306 (8th Cir. 1990). The government's argument is, first, that the circumstances relied on by the trial court are not legally sufficient to sustain a departure, those circumstances having already been taken into account in the formulation of the guidelines; second, that the circumstances relied on by the trial court do not actually exist in this case; and, third, that the degree of departure was unreasonable.

In its remarks at a preliminary sentencing hearing, the trial court cited multiple letters that it had received from patients of Dr. Groene, all referring to their dependence on his medical skills and to some degree testifying to the high regard with which Dr. Groene is held in the community where he practices. The trial court also indicated that by allowing Dr. Groene to continue to work, restitution could be effected more quickly. The government argues that vocational skills, community support, and ability to make restitution are all specifically excluded by the guidelines as a basis for departure. *See* U.S.S.G. § 5H1.2, policy statement (education and vocational skills), § 5H1.5, policy statement (employment record), § 5H1.6, policy statement (community ties), § 5H1.10, policy statement (socioeconomic status), and § 5H1.11, policy statement (employment-related contributions to community).

Dr. Groene's response to that argument is that while the policy statements to the guidelines do say that those factors are "not ordinarily relevant" (all of the factors except socioeconomic status) or are "not relevant" at all (socioeconomic status), a departure may be sustained on the basis of the considerations noted in an extraordinary case. *See, e.g., United States v. Harrison,* 970 F.2d 444, 447–48 (8th Cir.1992); *see also United States v. Mogel,* 956 F.2d 1555, 1561–63 (11th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992). The question becomes, then, whether the circumstances of this case are so extraordinary as to justify a departure. We hold that they are not.

According to the trial court, Dr. Groene's patients attested to the effectiveness of his chiropractic ministrations in relation to skull asymmetries, headaches, fevers, vision problems, ear infections, sinus infections, allergies, jaw misalignments, tonsillitis, thyroid dysfunctions, back injuries, intestinal difficulties, fertility problems, and joint problems. The trial court then stated, "I don't want that [effectiveness] to be lost for 15 months if it can be avoided." The trial court also remarked, "What I believe is that there are people in the small community of Schuyler who not only depend upon Dr. Groene but live by him. I mean by that, if he's not

available to give them medical care they will not receive it. There are those who think there's no other medical care of any substantial quality that's available to them.... Not because there [are] no other persons to go to but because they [are] that much committed." The trial court concluded, "[I]t seems to me the sentencing commission didn't and couldn't take into account sufficiently the impact that the absence of this particular physician could have on his local community by being in prison."

The government rebuts these conclusions with an affidavit, also offered at the sentencing hearing, summarizing a telephone survey on the availability of other chiropractors within a 50–mile radius of Schuyler, Nebraska, and in Lincoln, Nebraska (about 70 miles from Schuyler). The results of that survey indicate that at least 23 chiropractors within a 50–mile radius and at least 35 chiropractors in Lincoln are currently accepting new patients. The survey, moreover, does not even address the availability of doctors other than chiropractors. Under these circumstances, we hold that the trial court erred in finding that Dr. Groene's absence from the community would impose such a significant hardship on that community as to justify a departure from the guidelines in this case. We think it wrong to have concluded that this case presents facts sufficiently removed from that "heartland" of cases that the sentencing guidelines are intended to rule. The exigency identified is simply insufficient to warrant a departure in the face of the caveats, already alluded to, contained in the sentencing guidelines.

We therefore remand the case for resentencing in light of this opinion.

LOKEN, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's decision to affirm Dr. Groene's conviction, but I respectfully dissent from its decision to remand this case for resentencing.

We may set aside a district court's departure from the applicable guideline range if the resulting sentence is "unreasonable." 18 U.S.C. § 3742(f)(2). In making such a determination, we "shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). The Supreme Court has cautioned that "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." *Williams v. United States,* — U.S. ——, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992).

The district court's decision to depart was based upon factors "not ordinarily relevant" to sentencing under the Guidelines—what Chief Judge Breyer recently described as "discouraged factors." *United States v. Rivera,* 994 F.2d 942, 948 (1st Cir.1993). Such factors warrant departure only if present in unusual kind or degree. The district court recognized this legal constraint on its discretion, but nonetheless concluded that Dr. Groene's vocational skills are sufficiently unusual to warrant a departure. The departure, relatively modest in terms of total punishment, was intended to impose detention without depriving the citizens of Dr. Groene's rural community of his valued services.

As the court seems to recognize, the district court committed no error of law in concluding that these discouraged factors might justify a downward departure in unusual circumstances. Therefore, we are left to review, under a statutory reasonableness standard, the district court's judgment that the circumstances in this case were sufficiently unusual to warrant a departure. We have repeatedly stated that such a departure decision

involves what is quintessentially a judgment call. District courts are in the front lines, sentencing flesh-and-blood defendants. The dynamics of the situation may be difficult to gauge from the antiseptic nature of a sterile paper record. Therefore, appellate review must occur with full awareness of, and respect for, the trier's superior "feel" for the case. We will not lightly disturb decisions to depart.

*United States v. Passmore,* 984 F.2d 933, 937–38 (8th Cir.1993), quoting *United States*

*v. Lang,* 898 F.2d 1378, 1380 (8th Cir.1990). I regret that in this case the court has abandoned the wise counsel of these cases and of *Williams* and has instead substituted its judgment for that of the district court. I would affirm the judgment of the district court in all respects.