982 F.2d 526
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES Of AMERICA, Appellee,
v.
Cindy WAUGH, Appellant.
 No. 91-3273.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: April 14, 1992.
Filed: December 16, 1992.
 
 1
 Before McMILLIAN and BOWMAN, Circuit Judges, and EISELE,* Senior District Judge.
 
 PER CURIAM
 
 2
 Appellant Cindy Waugh challenges her convictions for conspiracy to distribute cocaine, distribution of cocaine, and carrying a firearm in relation to a drug trafficking offense. The trial court[1] sentenced Appellant to a term of imprisonment of 115 months on the two drug counts and a consecutive term of 60 months on the gun count. Appellant raises three issues on appeal. We affirm.
 
 I.
 
 3
 The grand jury returned a four count indictment against Appellant Cindy Waugh on February 16, 1990. The indictment charged her with conspiracy to distribute cocaine, aiding and abetting an attempt to possess cocaine with the intent to distribute it, unlawful possession of a firearm in connection with a drug-trafficking offense, and structuring a financial transaction with the intent to deceive the Internal Revenue Service. The grand jury returned a three-count superseding indictment on March 20, 1991, charging Ms. Waugh with conspiracy to distribute cocaine, attempted possession of cocaine with intent to distribute it, and unlawful possession of a firearm in connection with a drug-trafficking offense. The jury convicted Ms. Waugh on all counts of the superseding indictment.
 
 
 4
 This case arises out of a "reverse sting" operation, that is, an undercover operation where the government arranged the sale of a kilogram of cocaine in order to apprehend a large-scale distributor. Craig Waugh, Appellant's brother, and David Ipock, Appellant's friend, purchased a kilogram of cocaine from undercover officers of the Omaha, Nebraska, Police Division. Both men were apprehended. They were charged in Nebraska state court.
 
 
 5
 Police arrested Appellant Cindy Waugh shortly after arresting her brother and Mr. Ipock. While Appellant was not present at the actual purchase of the cocaine, Appellant met with her brother before the sale to give him the money, some $15,000, to purchase the cocaine. Appellant also arrived with Mr. Ipock at a restaurant to meet with her brother, not far from the hotel where the transaction was to take place. In the parking lot of the restaurant, Mr. Ipock, Mr. Waugh, and Ms. Waugh conversed for a short period of time. Mr. Ipock switched from his car to Mr. Waugh's car; he and Mr. Waugh went to the hotel to purchase the cocaine. Ms. Waugh drove Mr. Ipock's car to the same hotel. Appellant kept lookout for signs of trouble with the transaction by driving past the hotel entrance repeatedly while the transaction took place.
 
 
 6
 Shortly after the transaction took place, and before Ms. Waugh realized that her brother and Mr. Ipock had been arrested, Police arrested Ms. Waugh. She was sitting next to a loaded, sawed off, 12 gauge shotgun at the time of her arrest. In the seat behind her, and within her reach when she was driving the car, was a loaded .44 magnum revolver.
 
 II.
 
 7
 Appellant first contends that the trial court erred by permitting individual jurors to pose questions to the witnesses. She argues that the practice of permitting jurors so to participate in the trial process should not be permitted as a matter of law. Appellant also argues that juror questioning of witnesses is prejudicial and unfair.
 
 
 8
 The Court reviews juror questioning of witnesses in this case under the plain error doctrine. Appellant failed to object to the procedure at trial, precluding anything more than review for plain error in this Court. Fed. R. Crim. P. 51, 52(b); United States v. Land, 877 F.2d 17, 19 (8th Cir.) cert. denied, 493 U.S. 894 (1989). This Court has on several occasions upheld the practice of juror interrogation of witnesses. United States v. Johnson, 914 F.2d 136, 137 (8th Cir. 1990). This panel cannot now proscribe the practice. Id., 914 F.2d at 138.
 
 
 9
 In the instant case, the procedure the district court followed is not plainly erroneous. The government contends, and Appellant does not dispute, that the trial judge posed questions after jurors submitted written questions in response to the solicitation of the court. This Court approved such a practice in the highly unusual situation where jurors are permitted to question witnesses in a criminal case. United States v. Lewin, 900 F.2d 145, 148 (8th Cir. 1990).
 
 
 10
 In none of the five instances where jurors asked questions were the substantial rights of Appellant affected. At a juror's request, the trial judge asked whether Officer Barry J. DeJong could actually see the motel where Mr. Waugh and Mr. Ipock stopped, while Officer DeJong was observing Ms. Waugh's car when the sale transaction took place. The court followed up the witness' response with additional questions to clarify the factual scenario. Finally, the court permitted counsel to question the witness again. The trial judge's questioning of Officer DeJong did not prejudice Appellant in this case.
 
 
 11
 The trial judge questioned Officer Ray Torres, the undercover officer who actually sold the cocaine, concerning the weight of the cocaine. Specifically, the trial judge asked if one kilogram of cocaine was actually 2.2 pounds. Officer Torres responded that it was. Such questioning did not adversely affect Appellant's rights.
 
 
 12
 The trial judge questioned Ms. Lorraine Robinson, the government's witness and Ms. Waugh's former housekeeper. Ms. Robinson testified generally about large quantities of cash in Ms. Waugh's home over an extended period of time, raising the inference that Ms. Waugh had an undisclosed source of cash income that she concealed from the Internal Revenue Service. The trial judge's questions-reflecting inquiries received from the jury-concerned whether or not Ms. Robinson had ever seen guns in Ms. Waugh's house. Ms. Robinson answered that she had not seen guns in the house. Such testimony would have been exculpatory; there was no harm to Ms. Waugh in this instance.
 
 
 13
 The trial judge questioned Ms. Cindy Hespen, the government's witness and one of Ms. Waugh's former friends. Ms. Hespen testified generally about an incident where Ms. Waugh stored an automobile in Ms. Hespen's garage. Ms. Waugh accused Ms. Hespen or her husband of stealing something worth $30,000 out of the car, raising the inference that drugs had been stored in the automobile and later stolen. The Court inquired whether Ms. Hespen or her husband ever found out what item had been stolen. Ms. Hespen testified that she never knew what had allegedly been stolen. The Court concludes that there was no harm to Ms. Waugh as a result of this inquiry.
 
 
 14
 Finally, the trial court questioned Officer Ted Green. Officer Green arrested Mr. Waugh and Mr. Ipock immediately before Ms. Waugh's arrest. His testimony concerned the circumstances of those arrests. Officer Green also testified about the guns found in Mr. Ipock's automobile when Ms. Waugh was arrested while sitting in the driver's seat. The court asked two questions prompted by the jury's written questions. First, the trial judge asked if Police retained as evidence the marijuana cigarette Ms. Waugh had been smoking at the time of her arrest. Officer Green did not know. The Court also asked Officer Green if either Craig Waugh or David Ipock had any weapons in their personal possession or in Mr. Waugh's automobile at the time of their arrest. Officer Green testified that they did not have any weapons in the car or on their persons. The Court concludes that such questioning by the Court was not unduly prejudicial to Ms. Waugh.
 
 III.
 
 15
 Appellant argues[2] that the trial court erred in failing to consider the disparity between her sentence and the state court sentences Mr. Waugh and Mr. Ipock received.[3] Specifically, she contends the trial court mistakenly believed it did not have the power to consider disparity between state and federal sentences as a mitigating circumstance in support of her motion for a downward departure. We disagree.
 
 
 16
 As our review of the complete transcript indicates, the trial court clearly believed it had the power to depart downward but elected not to do so. This is not a case where the district judge stated that he would have given Defendant a lower sentence but for the restrictions imposed by the Sentencing Guidelines. To the contrary, the trial court concluded that Defendant's "circumstances" did not warrant any mitigation. As the government argued before this Court, Appellant was both financier and organizer for the purchase of cocaine. As the trial judge stated at Appellant's sentencing:
 
 
 17
 But the evidence in this case demonstrated that the defendant had been involved in the use and in the distribution, either for or with or without pay for it, but in the distribution of cocaine for some period of time prior to this.
 
 
 18
 There is evidence that the jury believed of substantial amounts of money that were in her home, in cash, that were hidden in strange places.
 
 
 19
 There is evidence with respect to the lost property out of the automobile and the value of thirty thousand dollars, circumstantial evidence, but all evidence which the jury considered in reaching its decision that the defendant was guilty of three counts which were set forth in the superseding indictment.
 
 
 20
 Sentencing Transcript at 498. Without Appellant, it would not have been possible for the other two men to attempt to purchase the cocaine.
 
 
 21
 There is no error here because the district court imposed a sentence that is within the Guideline range, United States v. Evidente, 894 F.2d 1000, 1005 (8th Cir. 1990), albeit after reducing the offense level two points as a result of the government's failure to prove Appellant's involvement as head of a conspiracy involving five (5) or more persons. Disparity in sentencing between the three defendants at the hands of separate sovereigns is not a sufficient justification in itself to require a district court to depart from the Guideline range. United States v. Vilchez, 967 F.2d 1351 (9th Cir. 1992) (as amended July 9, 1992); United States v. Dockery, 965 F.2d 1112, 1117-18 (D.C.Cir. 1992). However, this case demonstrates that the Federal Sentencing Guidelines do not necessarily prevent disparate sentences at the hands of separate sovereigns. On the contrary, they often permit, and sometimes require, disparate sentences. But Appellant's sentence is not only the result of simple application of the Sentencing Guidelines.
 
 
 22
 The disparity here is primarily the result of the conscious exercise of prosecutorial discretion in charging the three individuals involved. Mr. Ipock and Mr. Waugh avoided federal prosecution-and application of substantive federal criminal law and the Federal Sentencing Guidelines to their sentences-as a result. Mr. Ipock and Mr. Waugh plead guilty in state court to unlawful possession of cocaine with intent to distribute. Mr. Ipock also plead guilty to simple possession in state court. Neither man was charged in state court with conspiracy to distribute drugs or with use of a gun in connection with a drug trafficking crime. While the two men received substantially shorter sentences than Appellant, "[t]he penalty in state court could have been substantially greater," as the trial court found at sentencing. Sentencing Transcript at 497. The two men were beneficiaries, then, of: 1.) the exercise of prosecutorial discretion in charging; 2.) the exercise of prosecutorial discretion in negotiating favorable plea bargains; 3.) a far different sentencing system at law; and 4.) a sentencing judge who chose to exercise his discretion to their benefit under that sentencing system.
 
 
 23
 Appellant, however, was found guilty of conspiracy to distribute cocaine, a crime with a mandatory statutory minimum penalty of 5 years in prison, 21 U.S.C. § 841(b)(1)(B). Appellant also was found guilty of carrying a firearm during and in relation to a drug trafficking offense, a crime with a separate, mandatory, statutory minimum penalty of 5 years in prison. 18 U.S.C. § 924(c). So Appellant's sentence is more a result of Congressionally-mandated minimum penalties for her crimes than a result of application of the Federal Sentencing Guidelines. Appellant's sentence should not be reduced as a matter of law merely because the prosecutors involved chose not to exercise their discretion in her favor.
 
 IV.
 
 24
 Finally, Appellant challenges the district court's two point enhancement of her base offense level for obstruction of justice. Absent this Court's recent decisions in United States v. Galloway, 976 F.2d 414 (8th Cir. 1992), and United States v. Wise, 976 F.2d 393 (8th Cir. 1992), it could be argued that this issue raised serious constitutional problems. Subornation of perjury is a crime; but it is a crime for which this defendant has never been indicted or tried in accordance with the provisions of the Fifth and Sixth Amendments to the United States Constitution. See, e.g., United States v. Clark, 792 F. Supp. 637 (E.D.Ark. 1992). Certainly, it is not conduct related to the crime for which she was tried and convicted. Yet the finding that she did attempt to suborn perjury, and thus that she "obstructed justice," results in an additional term of imprisonment of some 21 to 27 months.
 
 
 25
 After an evidentiary hearing on the objections to the presentence report, the district court adjusted Appellant's base offense level upward. The government put on Ms. Lorraine Robinson, one of the government's witnesses at trial. Ms. Robinson testified at the sentencing hearing that Defendant telephoned her at least twice prior to trial in an attempt to have Ms. Robinson change her anticipated trial testimony. Appellant participated in the hearing and cross-examined the government's witnesses. "We accept the district court's factual findings unless they are clearly erroneous. 18 U.S.C. § 3742(d)." United States v. Williams, 879 F.2d 454, 457 (8th Cir. 1989). The Court has reviewed the record of the hearing and cannot say that the trial court's factual finding of obstruction of justice is clearly erroneous. Appellant's pretrial conduct clearly falls within the boundaries of the application notes to Sentencing Guidelines § 3C1.1, thereby permitting the upward adjustment for obstruction of justice. United States v. Holland, 884 F.2d 354, 359 (8th Cir. 1989).
 
 
 26
 AFFIRMED. See 8th Cir. R. 47B.
 
 
 
 *
 The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation
 
 
 [1]
 The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska
 
 
 [2]
 Appellant at oral argument for the first time contended she was the victim of selective prosecution at the hands of the United States Attorney. Appellant waived this issue because she failed to raise this defense in the district court. Fed. R. Crim. P. 12(b)(1); United States v. Schmidt, 935 F.2d 1440, 1450 (4th Cir. 1991); see, Thelen Oil Co., Inc. v. Fina Oil & Chemical Co., 962 F.2d 821, 823 (8th Cir. 1992). Therefore this Court does not consider the issue. Where there is a joint state-federal police action resulting in the apprehension of several persons for essentially the same drug crime or crimes and the federal prosecutor makes the decisions as to which defendants will be prosecuted under state law and which will be prosecuted under federal law, the consequences of such a decision can be immense. Generally, the persons successfully prosecuted under federal law will receive substantially greater sentences than those prosecuted under state law for essentially the same offense. It is possible for such decisions to be made for improper purposes. But challenges thereto must be raised in the district court in the first instance
 
 
 [3]
 Mr. Ipock is serving two concurrent sentences in state prison, one that runs from one to three years, the other that runs from three to six years. Mr. Waugh is serving a three to six year sentence in the Nebraska State Penitentiary. Both sentences arise out of state court convictions for the same underlying conduct