**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Harriet RIMELL, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Albert RIMELL, Defendant–Appellant.**

**Nos. 92–3867, 93–1036.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 8, 1993.

Decided April 12, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied May 26, 1994 in No. 93–1036.

---

Richard J. Burke, Jr. (argued), St. Louis, MO, for appellant Harriet Rimell.

Robert B. Ramsey (argued), St. Louis, MO, for appellant Albert Rimell.

Audrey G. Fleissig and Rosemary Casey Meyers, Asst. U.S. Attys. (argued), St. Louis, MO, for appellee.

Before HANSEN, Circuit Judge, JOHN R. GIBSON [*], Senior Circuit Judge, and MELLOY [**], District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Albert Rimell appeals his convictions on eleven counts of bank fraud, 18 U.S.C. §§ 1344 and 2, six counts of making false entries in bank records, 18 U.S.C. §§ 1005 and 2, one count of fraudulently transferring or concealing property in contemplation of bankruptcy, 18 U.S.C. § 152, and three counts of fraudulently concealing the proceeds of a sale in contemplation of bankruptcy, 18 U.S.C. §§ 152 and 2. Albert Rimell's wife, Harriet Rimell, appeals her convictions on one count of fraudulently transferring or concealing property in contemplation of bankruptcy, 18 U.S.C. § 152, two counts of fraudulently concealing proceeds of a sale in a bankruptcy matter, 18 U.S.C. §§ 152 and 2, and two counts of making false oath and account in a bankruptcy matter in violation of 18 U.S.C. § 152. Albert Rimell argues that his convictions should be reversed because he was represented during some of his trial by an unlicensed attorney, and because the separate counts of his indictment are multiplicitous. He also contends that the district court [1] erred in sentencing. Harriet Rimell argues that her convictions should be reversed because the district court erred in refusing to grant severance. We affirm Albert and Harriet Rimell's convictions.

* The HONORABLE JOHN R. GIBSON, was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

** The HONORABLE MICHAEL J. MELLOY, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

The convictions in this case stem from a simple bank fraud scheme. Albert Rimell, a real estate broker in St. Louis, Missouri, along with his employees, Lawrence Margulis, John Treacy, and Gregory Chapman, [2] fraudulently obtained loans to buy rental properties. Rimell would ask a person he knew to buy rental property. By using "straw parties" (or partnerships in which he had an interest) he would then buy the property for a higher price, obtain a loan based on the higher price, and disburse the excess loan proceeds to himself and his employees. In order to obtain the loans, Rimell filed false loan applications and provided the banks with inflated rental schedules for the properties. Evidence at trial showed that Rimell used this scheme in connection with purchasing five properties.

Rimell's scheme began to unravel in 1988 when the various partnerships which owned the rental properties defaulted on their loan payments. Mercantile Bank, which had loaned money on three of Rimell's properties, initiated foreclosure proceedings. To avoid foreclosure, the partnerships indebted to Mercantile filed for voluntary bankruptcy. After Mercantile and the partnerships agreed to a workout schedule, Mercantile examined the records of the properties, and discovered the rental income was insufficient to service the debt.

In December 1988, the Rimells met with at least two attorneys to discuss "estate planning." The Rimells created the Rimell Family Trust in January 1989, transferring their home and several partnership interests into the revocable trust. The trust, which the Rimells could change at any time, contained a clause directing the trustee "not to pay any debt, obligation or liability to Mercantile Bank." The Rimells opened bank accounts in the trust's name and began to deposit paychecks and pay household expenses out of

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

2. The government also charged Lawrence Margulis and John Treacy with bank fraud. Margulis and Treacy pled guilty to the charges and testified for the government at the Rimells' trial. Gregory Chapman testified for the government under a grant of immunity.

the trust accounts. In May 1989, the Rimells executed another trust document and deed by which they purported to transfer their home to a second Rimell Family Trust. This trust named their son, Samuel, as trustee.

By the fall of 1989, it was evident that the various partnerships could not achieve the plans of reorganization. On October 18, 1989, Mercantile Bank, Mark Twain Bank, and Boatmen's Bank filed petitions for involuntary bankruptcy against the Rimells. After the Rimells contested the bankruptcy, the bankruptcy court held a trial beginning in late December 1989. Regarding the April 1989 refinancing of the home, owned by Harriet and Albert Rimell, Harriet Rimell testified that after paying off the first mortgage and for some remodeling, the Rimells paid about $65,000 of the proceeds in cash to their children. The evidence at trial showed, however, that the Rimell children did not receive any of the refinancing proceeds. The bankruptcy judge adjudged the Rimells bankrupt and appointed a trustee to administer the bankruptcy estate.

On April 2, 1990, as part of the bankruptcy proceedings, the bankruptcy court required the Rimells to file Statements of Financial Affairs. The Statements required the Rimells to disclose all transfers of assets within one year of the filing of the bankruptcy petition. The Rimells did not disclose that they had transferred their home to a trust. At the first meeting of creditors, Harriet Rimell admitted that she had lied in bankruptcy court about what had happened to the refinancing proceeds. At these meetings, the creditors told the Rimells that they intended to dissolve the trust and sell the house for the benefit of creditors. The creditors also advised Harriet Rimell that her personal property constituted property of the estate, and that under bankruptcy court rules, she would only be allowed to retain a limited amount of that property.

On July 13, 1990, the bankruptcy trustee filed suit against the Rimells to set aside the trust, notified the Rimells' attorney of the action, and had copies served on the Rimells. Without notifying their attorney or the trustee, the Rimells sold their house for $165,000 on July 23. The proceeds of the sale, ap-

proximately $49,000, were issued in a cashier's check payable to the Rimells' son, Samuel, and then deposited in three separate bank accounts. One account was in Samuel Rimell's name, one account in the name of Harriet Rimell's mother, and a third account in the name of Samuel Rimell, d/b/a Mechanical Delivery Systems.

The first weekend in August the Rimells also held an estate sale at their home. When the bankruptcy trustee learned about the sale, he filed a motion for an emergency hearing with the bankruptcy court. The court held a hearing on August 8, and Harriet and Albert Rimell testified that the property sold at the sale belonged to their son. There was evidence, however, that the Rimells actually sold the contents of their own home.

Following a three-week trial, Harriet and Albert Rimell were convicted on all counts. Both appeal.

## I.

■ Albert Rimell contends that this court must reverse his convictions because he was denied his Sixth Amendment right to counsel. Rimell asserts that he was denied effective assistance of counsel because Daniel Dalton, not yet admitted to the Missouri Bar, cross-examined several witnesses. At the time of Rimell's trial, Dalton had recently graduated from law school, had taken the bar exam, and was awaiting his results. Rimell makes no argument that Dalton's examination was in any way inadequate, but he argues that Dalton's representation was a per se violation of his Sixth Amendment right to counsel.

Bradford Kessler, a licensed attorney retained by Rimell, introduced Dalton to the jury during voir dire examination and Dalton assisted at the trial. During the trial, Dalton, with Kessler present at the counsel table, cross-examined five witnesses, objected during the direct examination of some of the five witnesses, and announced that there would be no cross-examination of two other witnesses.

Dalton's first statement in the presence of the jury and court occurred during the fourth

day of trial. After the government's examination of V.J. Thomas, Dalton announced that he had no questions for the witness. During the government's examination of Thomas, Kessler made three objections, all of which occurred in the latter part of the examination. Dalton made a similar statement with respect to witness David Rich. Dalton cross-examined Milton Goldenberg and Albert Mollman, who together with Rich, had sold properties to Rimell's associates. These witnesses testified about the transactions, the documents executed, and the prices paid for the properties. Dalton also cross-examined Terry Hammer, John Moore, and David Budding, who were straw parties who signed documents at Rimell's request.

Before Dalton cross-examined his first witness, John Moore, Kessler requested to approach the bench, and the court held a bench conference. The bench conference was not transcribed. The district court order denying Rimell's Rule 60(b) motion, however, recites that during the bench conference Kessler requested that the court allow a non-attorney to participate in the trial. *United States v. Rimell*, No. 4:92 CR 12 SNL, slip op. at 2 (E.D.Mo. Jan. 25, 1993). The order states that Kessler made this request out of the hearing of the jury, in open court, and in the presence of the defendant. *Id.* The judge further stated that he understood that the non-attorney had graduated from an accredited law school, had taken the bar examination and was awaiting the decision, and had been assisting defendant's counsel "in this and other matters." *Id.* The government argues that these facts were developed during the bench conference out of the hearing of the jury, but we have no way of knowing whether this occurred. Rimell, however, has not contested the district court's recitals in its order.

After Rimell's convictions, he filed a Petition for Writ of Error Coram Nobis, arguing

that he was denied effective assistance of counsel. The district court converted the writ into a motion to review under Fed. R.Civ.P. 60(b), and denied the motion in its order denying Rimell bond pending appeal. *Id.* at 3. The district court conceded that it did not follow the Missouri Rules of Court as to non-lawyers and did not obtain a written consent from Rimell. *Id.* at 2. Nevertheless, the court concluded that Rimell voluntarily consented to Dalton's participation, and that Dalton's limited involvement in the trial did not constitute ineffective assistance of counsel. *Id.* at 3.

Rimell contends that representation by an unlicensed person entitles him to a reversal of his conviction, that the error was a per se violation of his right to counsel, and that prejudice is presumed so that a harmless error analysis under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is inappropriate. He further argues that he could not consent to the unlawful representation by an unlicensed attorney.

Rule 26 of the Rules of the United States District Court for the Eastern District of Missouri provides that law students properly certified and authorized under Missouri Supreme Court. Rule 13 may participate in a criminal case. The Rule, however, requires written consent from the client and prohibits a student from interrogating witnesses or presenting oral argument in a felony case. There are also a number of other provisions of Missouri law and rules of the courts which prohibit an unlicensed person from practicing law.[3]

We have recently held that there is no per se violation of a defendant's Sixth Amendment right to counsel when a person not properly licensed to practice law jointly represents a defendant. *United States v. Rosnow*, 981 F.2d 970 (8th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1596, 123 L.Ed.2d 159 (1993). In *Rosnow*, an attorney

---

3. *See, e.g.,* Mo.Rev.Stat. § 484.020 (Cumm.Supp.1992) ("No person shall engage in the practice of law ... unless he shall have been duly licensed therefor ..."); Rules of the United States District Court for the Eastern District of Missouri, R. 2(F) ("Any person who before his or her admission to the bar of this Court exercises any of the privileges of a member of such bar,

without leave of Court first obtained ... is guilty of contempt of court ..."); Mo.Sup.Ct.R. 5.5 ("A lawyer shall not (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or (b) assist [an unlicensed person] in activity that constitutes the unauthorized practice of law.").

who had been a member of the bar but was later suspended represented the appellants. *Id.* at 971. Because the appellants had been jointly and later independently represented by a licensed attorney, we concluded that they were not denied effective assistance of counsel. *Id.* at 972. We reasoned that these facts distinguished this case from the per se violation found by the Second Circuit in *Solina v. United States*, 709 F.2d 160 (2d Cir. 1983). *Rosnow*, 981 F.2d at 972. We concluded: "If co-counsel provides petitioners with effective assistance at all critical stages of the proceedings, petitioners' Sixth Amendment rights have been protected." *Id.* (citing *United States v. Novak*, 903 F.2d 883, 890 (2d Cir.1990)).

Like *Rosnow*, Kessler, a licensed attorney, represented Rimell throughout all of stages of his trial. The record demonstrates that the court referred to Kessler as Rimell's counsel and acknowledged that Dalton was assisting Kessler. It is evident from the record that Kessler was present during Dalton's limited participation in the trial. *See United States v. Cronic*, 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 2047 n. 25, 80 L.Ed.2d 657 (1984) ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."); *cf. Siverson v. O'Leary*, 764 F.2d 1208, 1217 (7th Cir.1985) (attorney's absence during jury deliberations and return of verdicts constituted ineffective assistance of counsel); *Green v. Arn*, 809 F.2d 1257, 1262–63 (6th Cir.1987) (absence of attorney during cross-examination of key government witness violated defendant's Sixth Amendment rights), *vacated on other grounds*, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987), *reinstated*, 839 F.2d 300 (1988), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 979 (1989). This case is different from *Solina*. In that case, the defendant was represented by a person who had gone to law school, but who had failed the bar examination twice. 709 F.2d at 162. No other lawyer represented him. *Id.; see also Novak*, 903 F.2d at 890 ("attorney" secured admission to the bar by fraudulently representing to the state that he was eligible

for special dispensation from taking the bar exam).

The Second Circuit recently clarified its *Solina* ruling in *Bellamy v. Cogdell*, 974 F.2d 302 (2d Cir.1992) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 1383, 122 L.Ed.2d 759 (1993). In *Bellamy*, the Second Circuit explained that per se Sixth Amendment violations have been found in only two limited circumstances and applied "without enthusiasm." *Id.* at 306 (quoting *United States v. Aiello*, 900 F.2d 528, 532 (2d Cir.1990)). *Bellamy* explained in detail its reasons for application of the per se rule to an unlicensed attorney in *Solina*. *Bellamy*, 974 F.2d at 307–08. The court held that an attorney's admitted health problems before trial resulting in the attorney's immediate suspension of his license after trial did not constitute per se ineffective assistance of counsel. *Id.*

There is no doubt that Dalton's participation in the trial violated the local rules of court, as well as the ethical code in the Missouri law, *see supra* note 3. Nevertheless, Rimell makes no claim that his representation was in any way ineffective, but relies solely on the argument that Dalton's participation was a per se violation. The district court stated that its observation of Dalton's cross examination of witnesses and general legal ability, together with its belief that there was voluntary consent on the part of Rimell who was present in court when the request was made, was such that it did not feel that Dalton's actions amounted to ineffective assistance of counsel. We have independently reviewed the record, and conclude there was no violation of Rimell's Sixth Amendment rights. In this case, the court, opposing counsel, and Rimell knew Dalton's status. None of the testimony of the witnesses who Dalton cross-examined or declined to cross-examine was subject to dispute and much, if not all, of their testimony was corroborated by documents and testimony of other witnesses. As the district court found, these witnesses were "bit players" in the government's case against Rimell. Dalton's participation in Rimell's trial does not constitute ineffective assistance of counsel in violation of Rimell's Sixth Amendment rights.

## II.

■ Rimell next argues that the bank fraud counts contained in Counts 1 through 11 of his indictment are multiplicitous. Count 1 of the indictment charged Rimell with executing a scheme to defraud six banks from October 1984 until September 1988 in violation of 18 U.S.C. §§ 1344 and 2.[4] Rimell contends that the next ten counts (Counts 2–11) are multiplicitous because they charge Rimell with one separate factual element already charged in Count 1. Rimell argues that the government charged the contours of the scheme in Count 1 and then separately charged each execution of the scheme in the subsequent counts, and therefore, the counts are multiplicitous.

■ An indictment which charges a single offense in multiple counts is multiplicitous. *Gerberding v. United States,* 471 F.2d 55, 58 (8th Cir.1973).

■ The bank fraud statute was modeled after the mail and wire fraud statutes, and this court has stated that the bank fraud statute should be given the same broad construction as those statutes. *United States v. Solomonson,* 908 F.2d 358, 364 (8th Cir. 1990); *United States v. Matousek,* 894 F.2d 1012, 1014 (8th Cir.), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1832, 108 L.Ed.2d 961 (1990). Courts have generally held that each separate execution of a scheme to defraud may be pled as a distinct count of the indictment. *See, e.g., United States v. Schwartz,* 899 F.2d 243, 248 (3d Cir.), *cert. denied,* 498 U.S. 901, 111 S.Ct. 259, 112 L.Ed.2d 217 (1990); *United States v. Poliak,* 823 F.2d 371, 372 (9th Cir.1987) (each check written in a check-kiting scheme may be charged as a separate count of bank fraud), *cert. denied,* 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988).

This court recently defined "execution" of a scheme to defraud under the bank fraud statute, concluding that "the first step in determining the number of offenses is to ascertain the contours of the scheme; once that is done, each execution of that scheme is a separate offense." *United States v. Barnhart,* 979 F.2d 647, 651 (8th Cir.1992) (citing *United States v. Hammen,* 977 F.2d 379, 382 (7th Cir.1992)).

Count 1 of Rimell's indictment charged a scheme to defraud six St. Louis area banks. In the first twenty-one paragraphs, the indictment describes in general terms the manner in which Rimell carried out the scheme. Although the paragraphs were incorporated in each of the subsequent bank fraud counts, each of the subsequent bank fraud counts charged a separate and distinct execution of the scheme. The counts are not multiplicitous. *See Barnhart,* 979 F.2d at 651.

## III.

Finally, Rimell attacks his sentence,[5] arguing that the district court erred in increasing his adjusted offense by two levels under the applicable sentencing guidelines for obstruction of justice. *See* United States Sentencing Commission, *Guidelines Manual,* § 3C1.1 (Nov. 1993). He also argues that his age at the time of sentencing, sixty-two, entitles him to a downward departure under U.S.S.G. § 5H1.1.

■ Rimell's presentence report recommended that the district court increase his sentence by two levels for obstruction of justice because Rimell "provided false information to, and concealed information from the bankruptcy court in matters relating to the bank fraud."

---

4. 18 U.S.C. § 1344 provides:
   Whoever knowingly executes, or attempts to execute, a scheme or artifice—
   (1) to defraud a financial institution; or
   (2) to obtain any of the moneys ... or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
   shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

5. The district court sentenced Rimell to five years imprisonment on Count 1, and five years each on Counts 2–12 and 14–17. The court ordered the terms on Counts 2–12 and 14–17 to run concurrently with each other and consecutive to the term on Count 1, for an aggregate term of imprisonment of ten years. The court also ordered these sentences to run concurrently with the 108 month imprisonment term imposed in Counts 13 and 25–28.

We have carefully reviewed the record and the district court's findings with respect to the upward adjustment for obstruction of justice. It is clear that the court could not assess a section 3C1.1 enhancement on Counts 25, 26, 27 and 28 (which charged Rimell with bankruptcy fraud) because of his conduct in bankruptcy court.[6] To do so would result in double counting.[7] *United States v. Lloyd,* 947 F.2d 339, 340 (8th Cir. 1991) (per curiam) (conduct in concealing assets from bankruptcy court officers and committing perjury during bankruptcy proceedings cannot be used to impose an obstruction of justice enhancement when calculating sentence for bankruptcy fraud conviction). However, the court could assess an obstruction of justice enhancement as to Count 13 (the only remaining Guidelines count) which charged Rimell with a false bank entry, if it found that Rimell's conduct in the bankruptcy proceeding impeded the investigation or prosecution of Count 13. The district court specifically found that Rimell's bankruptcy court conduct impeded the investigation of all of the counts in this indictment, which the court found were related to each other. That finding would necessarily include Count 13. After careful study, we are convinced that the district court's finding is not clearly erroneous as to Count 13, and hence the two-level enhancement applied to the grouped Guidelines counts was appropriate. *United States v. Manuel,* 944 F.2d 414, 416 (8th Cir.1991) (applying clearly erroneous standard).

■ Likewise, the district court did not err in refusing to reduce Rimell's sentence based on Rimell's age. U.S.S.G. section 5H1.1 provides that "[a]ge may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm." Sections 5H1.1 and 5H1.4 also instruct that neither age nor physical condition should generally be taken into account in sentencing. The sentencing transcript shows that the district court considered Rimell's age and concluded that it was not relevant and that Rimell was in good physical condition. Indeed, Rimell testified that he wanted to work and repay the banks. There is no evidence that Rimell is "infirm" within the contemplation of section 5H1.1, p.s. The district court did not err in refusing to depart downward based on Rimell's age. *United States v. Harrison,* 970 F.2d 444, 447 (8th Cir.1992).

## IV.

■ Harriet Rimell also appeals her convictions. Her only argument is that the district court erred in refusing to sever the counts against her from those of her husband. She argues that joinder was improper, because the government did not name her in the bank fraud counts, and that the bank fraud counts are unrelated to the bankruptcy counts. In the alternative, she argues that the district court abused its discretion in refusing to grant severance under Fed. R.Crim.P. 14, and that she was prejudiced by the joinder of the claims against Albert Rimell.

■ To properly join defendants for trial, the indictment must allege that the defendants "participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). It is unnecessary that each defendant be named in each count. *Id.* The prerequisites for joinder are liberally construed in favor of joinder. *United States v. O'Connell,* 841 F.2d 1408, 1432 (8th Cir.1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). We review claims of misjoinder de novo. *United States v. Lane,* 474 U.S. 438, 449 n. 12, 106 S.Ct. 725, 732 n. 12, 88 L.Ed.2d 814 (1986).

6. The sentencing guidelines only applied to Count 13 and Counts 25–28. All other charges occurred prior to the effective date of the sentencing guidelines. The court sentenced Rimell to 54 months each on Counts 25–28 to run concurrently with each other, and 54 months on Count 13 to run consecutively with the term imposed in Counts 25–28.

7. We have some question as to whether Rimell raised this issue to the district court or this court. His argument to both the district court and this court was that there was no evidence that he wilfully obstructed the investigation, prosecution, or sentencing of his bank fraud charges with his testimony during the bankruptcy proceedings, and therefore, the two-level enhancement under section 3C1.1 was improper. *See United States v. Watts,* 940 F.2d 332 (8th Cir.1991).

The district court adopted the Report and Recommendation of the magistrate judge who concluded that the bank fraud counts asserted against Albert Rimell were sufficiently linked to both defendants. The magistrate judge reasoned:

> When read as a whole the indictment reflects a sequence of connected events with the defendants being involved at various points in the continuum. Thus, while the bankruptcy charges arose at a later point in time, the events involved in the charges ... were precipitated by and were linked to the fraudulent acts that had been committed earlier.

 This court has recognized that when "the indictment invites joint proof ... prima facie validity of joinder is shown." *O'Connell*, 841 F.2d at 1432 (citing *Haggard v. United States*, 369 F.2d 968, 974 (8th Cir. 1966), *cert. denied*, 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461 (1967)). There was overlapping evidence between the bank fraud and bankruptcy fraud counts. The conduct charged in the bankruptcy fraud counts followed and was a result of the conduct at issue in the bank fraud counts.

We also reject Harriet Rimell's argument that the district court abused its discretion under Fed.R.Crim.P. 14 in denying her motion for severance. *See United States v. Nevils*, 897 F.2d 300, 305 (8th Cir.) (applying abuse of discretion standard), *cert. denied*, 498 U.S. 844, 111 S.Ct. 125, 112 L.Ed.2d 93 (1990). To obtain a reversal for a failure to sever, defendant must show that the district court abused its discretion, and that the refusal resulted in severe or compelling prejudice. *United States v. Mason*, 982 F.2d 325, 328 (8th Cir.1993). Based on our review of the evidence presented at trial and the allegations charged in the indictment, we conclude that the district court did not abuse its discretion in refusing to sever. We see no prejudice to Harriet Rimell. First, the roles of Harriet and Albert Rimell in the bank fraud and bankruptcy fraud were distinct, and the court properly instructed the jury. *See O'Connell*, 841 F.2d at 1432. Second, there was substantial evidence that Harriet Rimell took an active role in the bankruptcy fraud. *United States v. Kopelciw*, 815 F.2d

1235, 1238 (8th Cir.1987) (defendant not entitled to severance merely because the evidence against a codefendant may be more damaging).

We affirm Harriet and Albert Rimell's convictions and sentences.