# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1584

_____

United States of America,      *

            *

         Plaintiff/Appellee,      *

            *

v.      *

            *

Kelley Anne Liveoak,      *

            *

         Defendant/Appellant.      *

_____

No. 03-1694

_____

Appeals from the United States
District Court for the Western
District of Missouri.

United States of America,      *

            *

         Plaintiff/Appellee,      *

            *

v.      *

            *

Robert Joseph Dupont, Jr.      *

            *

         Defendant/Appellant.      *

_____

03-2029

_____

United States of America,      *

            *

         Plaintiff/Appellee,      *

　　　　　　　　　　　　　　　　　　　*
　　　　v.　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　　*
Julia Elaine Bazazzadegan,　　　　　　*
　　　　　　　　　　　　　　　　　　　*
　　　　　　Defendant/Appellant.　　　*

_____

Submitted: November 19, 2003
Filed: July 27, 2004

_____

Before MELLOY, RICHARD S. ARNOLD, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

Robert Dupont, Jr., Kelley Liveoak, and Julia Bazazzadegan were charged with various counts involving a home health care fraud scheme. Dupont pled guilty and seeks to have his plea set aside for failure of consideration. Liveoak appeals her conviction, claiming improper joinder and that her motion for acquittal should have been granted. Bazazzadegan appeals the amount of loss assessed against her at sentencing. We affirm in part and reverse in part.

## I. BACKGROUND

On June 15, 2000, the government filed a twenty-two count indictment against eleven individuals and four corporations. In the indictment, the government alleged a health care fraud scheme that involved several residential care facilities, thousands of claims, and over 200 patients. The government alleged that over at least five years fifteen defendants, in various conspiracies, defrauded the government by falsely

certifying patients as homebound and submitting false claims to Medicare and Medicaid.

In order to receive home health services under Medicare, physicians are required to certify that certain individuals are considered homebound and require home health care. In this case, the various defendant home health agencies that provided these home health services, as well as their owners, were alleged to have conspired with the doctors to fraudulently certify patients as requiring home health care.

The Personal Care Program of Medicaid provides services to individuals who need assistance with everyday activities, such as bathing and taking medication. To qualify for this program, patients are assessed by case managers who visit residential care facilities. In this case, the government alleged defendants submitted false applications for payment for services on dates when the patients were in the hospital and therefore not receiving the personal care services.

## A.    Robert Dupont, Jr.

Appellant Robert Dupont, Jr. was charged with ten counts, including conspiracy to defraud the United States, failure to file a cost report with the Medicare Program, submitting false applications for Medicaid Benefits, and paying illegal renumeration under the Medicare Program. Three days into his trial, Dupont agreed to plead guilty to Count One, conspiracy to defraud the United States, in violation of Title 18 U.S.C. § 371. The government dismissed the remainder of the charges against him.

Though the written plea agreement made no mention of the condition, Dupont believed that the government would dismiss all charges against his stepdaughter, Kelley Liveoak, in exchange for his plea. Dupont's counsel also believed dismissal

of all charges against Liveoak was a term of the agreement, and he stated this understanding at the plea hearing. The government moved to dismiss only one of the two counts against Liveoak.

**B.     Kelley Liveoak**

Appellant Kelley Liveoak was charged in Counts One and Nine. In Count One, the government alleged that Liveoak participated in a conspiracy to defraud the United States government under the Medicare Part A program in violation of 18 U.S.C. § 371. In Count Nine, the government alleged that Liveoak submitted false applications for Medicaid benefits in violation of 42 U.S.C. § 1320a-7b(a)(1). The government dismissed Count One against Liveoak after Dupont's guilty plea.

On March 8, 2002, the magistrate judge ordered that all remaining defendants and counts be set for joint trial. Liveoak filed a Motion for Reconsideration of the magistrate judge's order, asking that her trial be severed from the trial of her co-defendant. The magistrate judge denied the motion on June 16, 2002. Trial began the next day against Dr. David Ray Trobaugh, Dr. Rafael Calabria, and Liveoak.

Dr. Trobaugh was charged in Counts Two, Six, and Eighteen. Count Two alleged that Dr. Trobaugh, along with three other individual defendants and three corporate defendants, conspired to certify patients as being homebound, when they were allegedly not homebound, in violation of 18 U.S.C.§ 371. Count Six alleged that Dr. Trobaugh conspired with certain defendants to obtain benefit payments based on the false certification of patients as being homebound, in violation of 18 U.S.C.§ 286. Count Eighteen alleged that Dr. Trobaugh was illegally receiving kickbacks related to home health care.

Dr. Calabria was charged in Counts Four and Eight. Count Four alleged that Dr. Calabria conspired with two other individual defendants and two corporate

-4-

defendants to certify patients as being homebound, when they were allegedly not homebound, in violation of 18 U.S.C. § 371. Count Eight alleged that Dr. Calabria conspired with certain defendants to obtain benefit payments based on the false certification of patients as being homebound, when they were allegedly not homebound, in violation of 18 U.S.C. § 286.

Liveoak was named only in Count Nine. Count Nine alleged that Liveoak, along with Lou Ann Dinkmeier and Dupont, submitted false claims for reimbursement under the Missouri Medicaid Program for personal care services in violation of 42 U.S.C. § 1320a-7b(a)(1) and 18 U.S.C. § 2.

Liveoak moved for a judgment of acquittal at the end of the government's case in chief, and it was denied. The jury found Liveoak guilty of Count Nine and acquitted Dr. Trobaugh and Dr. Calabria on all counts. On February 27, 2003, the district court sentenced Liveoak to six months imprisonment, with a recommendation she be placed in a halfway house.

## C. Julia Bazazzadegan

Appellant Bazazzadegan was accused of conspiring to certify certain patients as homebound to make them eligible to receive home health services. After the court granted her motion for severance, she proceeded to trial on February 8, 2002. Bazazzadegan presented evidence that the total loss to the government, as it relates to her, was $12,478.36. The government did not present any other evidence at trial regarding the amount of loss as it relates to Bazazzadegan.

Bazazzadegan pled guilty to Count Two, conspiring with Co-Defendant Dr. Trobaugh, and Count Four, conspiring with Co-Defendant Dr. Calabria, to certify patients as homebound. She was convicted of Counts One and Five at trial. The district court sentenced her to 30 months imprisonment, followed by three years of

supervised release. The district court ordered restitution of $122,386.81 to be paid within the first 30 months of release, and a mandatory assessment of $400.

## II. DISCUSSION

### A.    Robert Dupont, Jr.

Dupont states in his appeal that he and his attorney believed that, in exchange for Dupont's guilty plea, all charges against his stepdaughter, Kelley Liveoak, would be dropped. Because only one of two counts against Liveoak was dropped after his plea, Dupont argues that the district court should have set aside his guilty plea due to the failure of consideration for the plea. The government responds that there was no such element in the plea agreement and that Dupont failed to object or move for relief in the district court.

We review the denial of a motion to withdraw a plea for abuse of discretion. United States v. Gamble, 327 F.3d 662, 663 (8th Cir. 2003). We find the district court did not err in failing to set aside the guilty plea.

Even assuming Dupont satisfied procedural requirements below, his contention that his plea agreement included dismissal of all charges against Liveoak is without support in the record. There is no mention in the plea agreement of either of the charges against Liveoak being dropped. Further, the plea agreement states:

> The defendant has read the Plea Agreement, understands it, and by his signature, states that it is true and accurate and not the result of any threats or coercion. Both parties agree that no promises or agreements have been made other than those set forth in the Plea Agreement, nor has the United States promised the defendant any additional consideration to induce him to sign this Plea Agreement.

-6-

Dupont Plea Agreement at page 8. Dupont signed the agreement on February 13, 2002. The statements therein directly contradict the argument he brings on appeal. Therefore, we find that the district court did not err in failing to set aside his guilty plea for lack of consideration.

## B.     Kelley Liveoak

Kelley Liveoak argues on appeal that the district court erred in:  (1) failing to sever Liveoak's case for trial and (2) failing to grant Liveoak's motion for judgment of acquittal at the end of the government's case.

### 1.     Improper Joinder

Liveoak claims that the charge against her at trial was unrelated to the charges against the two doctors with whom she was tried.  She argues that while the doctors were charged with home health violations under Medicare (falsely certifying patients as homebound and illegally receiving benefits), she was not implicated in the Medicare fraud, but charged with falsely submitting claims to Medicaid.  The government alleges that all the activities were related and, citing a statement by Dupont, the scheme was "to hit Medicaid and Medicare hard before they knew what hit them."

This court reviews claims of misjoinder de novo.  United States v. Rimell, 21 F.3d 281, 288 (8th Cir. 1994). However, "misjoinder requires reversal only if it resulted in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." United States v. Sazenski, 833 F.2d 741, 745 (8th Cir. 1987) (internal quotations omitted).  This court reviews a denial of a motion to sever for an abuse of discretion and will reverse only upon a showing of severe prejudice.  United States v. Rock, 282 F.3d 548, 552 (8th Cir. 2002).

To properly join defendants for trial, the indictment must allege that the defendants "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). It is not necessary that all defendants be charged in each count. Id. "The prerequisites for joinder are liberally construed in favor of joinder." Rimell, 21 F.3d at 288. In Rimell, joinder was proper when "the indictment reflect[ed] a sequence of connected events with the defendants being involved at various points in the continuum." Id. at 289.

If joinder of defendants in the indictment "appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "To grant a motion for severance, the necessary prejudice must be 'severe or compelling.'" United States v. Pherigo, 327 F.3d 690, 693 (8th Cir. 2003) (quoting United States v. Warfield, 97 F.3d 1014, 1018 (8th Cir. 1996)). "In our consideration of the jury's ability to compartmentalize the evidence against the joint defendants, we consider 1) the complexity of the case; 2) if one or more of the defendants were acquitted; and 3) the adequacy of admonitions and instructions by the trial judge." Pherigo, 327 F.3d at 693.

Liveoak argues that her case was improperly joined with the cases of Drs. Trobaugh and Calabria, because there was no common scheme alleged linking the charges of the three defendants. She asserts that the doctors are alleged to have schemed to defraud Medicare by falsely certifying patients as homebound. Liveoak argues that the claim against her—that she submitted false claims to Missouri Medicaid for actual patients, but for dates during which they were in the hospital and not receiving care—is not part of a common scheme with the two doctors. The government, on the other hand, sees the activities as part of the same health care fraud scheme or related schemes.

-8-

We find that joinder was proper in this case. Though charges linked merely by common conspiracy members may not be joined, United States v. Nicely, 922 F.2d 850 (D.C. Cir. 1991), the charges here are linked not only by common conspiracy members, but also by an overall scheme in which each conspiracy member participated to fraudulently charge the government for health care costs. Further, even assuming Liveoak's case was improperly joined, she suffered no actual prejudice. Sazenski, 833 F.2d at 745 (in case of misjoinder, reversal required only upon showing of actual prejudice). Given that there was ample evidence supporting her conviction and the fact that her co-defendants were acquitted, Liveoak cannot show that misjoinder had a "substantial and injurious effect or influence in determining the jury's verdict." Id.

We also find unpersuasive Liveoak's related arguments that the district court abused its discretion in failing to grant her motion for severance because the jury was not able to compartmentalize the evidence. As stated above, there are three factors given in Pherigo that the court can use to assess the risk that the jury will not be able to compartmentalize the evidence: "1) the complexity of the case; 2) if one or more of the defendants were acquitted; and 3) the adequacy of admonitions and instructions by the trial judge." Pherigo, 327 F.3d at 693. The first factor is present to some extent, because the overarching conspiracy was complicated. However, what this jury had before it was not the whole conspiracy, but three defendants with six counts between them. The case was therefore not overly complex. The second factor clearly weighs in favor of the government, because both the doctors were acquitted on all counts. The third factor also weighs in favor of the government, because the court provided adequate admonitions to the jury. In light of these factors, Liveoak has failed to show that the district court abused its discretion in failing to grant severance.

### 2. Motion for Acquittal

Liveoak argues that the district court erred in denying her motion for judgment of acquittal at the end of the government's case. When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, giving the verdict "the benefit of all reasonable inferences that might have been drawn from the evidence presented." United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996).[1] In this case, the district court considered all the evidence and found it sufficient to support a conviction. Having reviewed the record, we find that the district court properly denied Liveoak's motion for judgment of acquittal.

### C. Julia Bazazzadegan

On appeal, Bazazzadegan claims that the district court erred in calculating the amount of loss in her case. First, she agues that the evidence did not reasonably support the loss estimate used by the district court, as required by U.S.S.G. § 2B1.1 n.3(C)(i). Second, she argues that the district court failed to give credit for the fair market value of the services rendered, as required under U.S.S.G. § 2B1.1 n.3(E)(i). The government responds, first, that activities involving a common purpose were properly considered when assessing the loss; and, second, that no offset was appropriate because the Part B (physicians services) payments would never net against Part A (home health benefit) losses.

---

[1] The government's first argument in response is that Liveoak is appealing her motion for acquittal she made at the close of the government's evidence, and that this motion was waived when she subsequently put on evidence in her defense. While it is true that her first motion for acquittal was waived, Zacher v. United States, 227 F.2d 219, 222 (8th Cir. 1955), Liveoak made a second motion for acquittal after the close of all evidence. We treat her appeal as one of this latter motion.

Generally, we review the district court's application of the Federal Sentencing Guidelines de novo. United States v. Gonzales, 220 F.3d 922, 926 (8th Cir. 2000). However, "[l]oss calculations also involve factual findings, which we review for clear error and reverse only if 'we are left with a definite and firm conviction that the district court erred.'" United States v. Piggie, 303 F.3d 923, 926-27 (8th Cir. 2002) (quoting United States v. Whatley, 133 F.3d 601, 606 (8th Cir. 1998)); see also 18 U.S.C. § 3742(e).

## 1.    Evidentiary Claim

When calculating a sentence, the sentencing court must "make a reasonable estimate of the loss." U.S.S.G. § 2B1.1 n.3(C). "The estimate of the loss shall be based on available information, taking into account, as appropriate and practicable under the circumstances, factors such as the following:  (i) The fair market value of the property unlawfully taken. . . ." Id. "The government bears the burden of proving the amount of loss by a preponderance of the evidence." United States v. Sample, 213 F.3d 1029, 1034 (8th Cir. 2000).

The only evidence in the record regarding the amount of loss in Bazazzadegan's case is the testimony of two nurses at trial. The government presented evidence regarding three patients of Bazazzadegan's home health agency, Paul E., John H., and Timothy S. Nurse Michelle Bahansen testified that the overpayment for Paul E. for home health benefits was $3,742.38 and that the overpayment for John H. was $1,369.54. Nurse David Newman testified that the loss to the government for overpayment for Timothy S. was $7,366.44. The government presented no other evidence as to the amount of loss for which Bazazzadegan was responsible. The total loss shown by the government was therefore $12,478.36. However, the government recommended the loss figure of $122,386.81, based on other defendants' plea agreements. Bazazzadegan disputed the figure in her plea

-11-

agreement. The court adopted the government's figure and ordered Bazazzadegan to pay restitution in the amount of $122,386.81.

The presentence report in this case recommended a loss amount in excess of $1 million. The government responded by indicating it was recommending a loss figure of $122,336.81. The defendant also disputes the loss computation but does not indicate a specific dollar amount. Both the government and the defendant referenced the plea agreement which provides that the government will assert that the loss to the defendant will result in no more than a ten level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1). This stipulation means that the government was recommending a loss between $120,000 and $200,000. The plea agreement goes on to recite that the defendant disputes this loss amount. The net effect is that the loss amount is in dispute and the amount set forth in the plea agreement was objected to. We have repeatedly held that the presentence report is not evidence when a timely objection is made. United States v. DeWitt, 366 F.3d 667, 671 (8th Cir. 2004); United States v. Stapleton, 268 F.3d 597, 598 (8th Cir. 2001); United States v. Hammer, 3 F.3d 266, 272 (8th Cir. 1993).

We are unable to determine from the record the basis of the court's finding that the loss amount was $122,386.81. The court did state at the beginning of the sentencing hearing "I am going to use the same amount. $122,386. Do you have any dispute with that?" Ms. Bazazzadegan's attorney then went on to indicate that she did dispute that amount and set forth the reasons for the dispute. However, the government presented no evidence to support the $122,386 figure. It appears that the $122,386 loss figure may have come from a stipulation involving a co-defendant. However, that is unclear from the record, and there is nothing to indicate that a co-defendant stipulation would be in any way binding upon Ms. Bazazzadegan.[2]

_____

[2]Our review of the record is further complicated by the fact that apparently a number of exhibits were introduced into evidence at the sentencing hearing. None of those exhibits have been made part of the appellate record.

We must conclude the government failed to prove the amount of loss was $122,386.81 as to defendant Bazazzadegan. We therefore remand this claim to the sentencing court for further development of the record as to the amount of loss.[3]

## 2.    Offset Claim

Once the sentencing court estimates the amount of loss, it must credit the fair market value of the services rendered against this figure.  U.S.S.G. § 2B1.1 n.3(E)(i).  ("Loss shall be reduced by the following:  The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected.")  Bazazzadegan argues that, if there had been no fraudulent billing, some of the home health care her patients received would have been received in a different form (a visit to a physician's office, instead of a physician's visit to the home), which would have been reimbursed by the government.  In other words, Medicare would have paid for the office visit, so the amount of loss for the home health care should be offset by the cost of this legitimate service.

The district court heard evidence on this issue at Ms. Bazazzadegan's sentencing.  It made a finding that it was mere speculation as to whether the patients would have gone to the doctor if they weren't homebound, or if they  would have received all the services provided by the doctors in this case.  The judge went on to find that there was no doubt that all the conspirators were working together to make as much money in a fraudulent manner as possible.  Consequently, he did not feel that any offset was appropriate.  We cannot conclude that factual finding was clearly erroneous and will not overturn it on appeal.

---

[3]Bazazzadegan is the only defendant who appeals her sentence in this case. We are expressing no opinion whether Blakely v. Washington, No. 02-16322004 WL 1402697 (U.S. June 24, 2004), has any applicability at the time of resentencing.

## III.  CONCLUSION

The judgment of the district court is affirmed with regard to Robert Dupont, Jr. and Kelley Liveoak.  As to the judgment against Julia Bazazzadegan, we reverse and remand for resentencing.

---