# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1525

_____

United States of America

*Plaintiff - Appellee*

v.

James Bruce Morris

*Defendant - Appellant*

_____

No. 12-1526

_____

United States of America

*Plaintiff - Appellee*

v.

Karen Sue Morris

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

James and Karen Morris (collectively, "Appellants") were charged with 44 counts of fraudulent behavior relating to theft of government funds, filing of their personal taxes, and actions they took as paid tax preparers. After a jury trial, Appellants were convicted of all charges. They now appeal their convictions and sentences. We affirm.

I.

James Morris entered the United States Army in 1966 but was hospitalized with meningitis during the first six months. He did not return to active duty and was honorably discharged in 1968. Later in life, James developed a variety of health problems—including temporal lobe epilepsy, occipital headaches, depression, and hearing loss—as a result of his service-related illness. Based on these health problems, James applied for various government benefits in the mid-1980's, including unemployability benefits from the Veterans Administration ("VA") and disability benefits from the Social Security Administration ("SSA"). In his initial applications, James told both agencies that he had not worked since 1983 or 1984 and that he remained unable to work. Both the VA and the SSA approved James for benefits. During intermittent reviews of his continuing eligibility for benefits over the next 20 years, James made additional representations to both agencies that he could not and did not work. From the 1980's through the 2000's, James received more than

$450,000 in VA and SSA benefits that were contingent on his inability to obtain or maintain employment.

During roughly the same time period, however, James sought and obtained designation as a public accountant ("PA") in the state of Arkansas. In his application for the PA title in 1987, James reported to the Arkansas State Board of Public Accountancy ("Board") that he had been continuously employed as an accountant since 1974. The Board granted James a PA license in December 1987, and he maintained this license through at least 2007. Further, in order to maintain his PA title, James was required to annually certify that he participated in continuing education hours and was involved in accounting. From 2002 through 2007, the years for which records of certification were available, James represented to the Board that he completed the necessary professional education hours and was still working as an accountant.

Beginning in at least 1997 and extending through 2007, James owned a company called B. Morris Limited ("BML"), which provided accounting, payroll, and tax preparation services. Karen Morris, whom James married in 2002, also worked at BML. Between 2005 and 2007, IRS records indicate Appellants each filed hundreds of tax returns. Appellants both reported to an IRS agent in 2007 that they were the principal tax return preparers at BML. Appellants also prepared and filed their own taxes between 2002 and 2005.

In addition to James's receipt of VA and SSA benefits, Appellants also obtained federal funds from the Department of Education ("DOE") in the form of Pell Grants for Karen's two daughters, Angela and Megan. Pell Grants are need-based grants to low-income students that, unlike loans, do not have to be repaid. Between 2005 and 2007, Karen and her daughters annually completed the Free Application for Federal Student Aid, which collects information regarding the student's household—including who lives in the household and the annual household income—in order to calculate

eligibility for federal student aid. In total, Karen's daughters received $28,870 in Pell Grant disbursements.

In 2011, Appellants were charged via superseding indictment with 44 counts of fraudulent conduct. The indictment charged Appellants, either individually or jointly, with theft of government funds from the VA and SSA, 18 U.S.C. §§ 2, 641; conspiracy to defraud the government, 18 U.S.C. § 371; concealment of a material fact as to SSA funds, 42 U.S.C. § 408(a)(4); obtaining Title IV funds by fraud and false statements, 20 U.S.C. § 1097(a), 18 U.S.C. § 2; filing false tax returns, I.R.C. § 7206(1), 18 U.S.C. § 2; and causing another to file a false tax return, I.R.C. § 7206(2), 18 U.S.C. § 2.

The Appellants were joined for jury trial. During the trial, the district court prohibited one of Appellants' witnesses from discussing the standard of care for tax preparers. Appellants moved for a judgment of acquittal at the close of the Government's case and again at the close of all evidence. The district court[1] denied both motions, finding that the Government had presented sufficient evidence—including inconsistent representations by Appellants—of the charged conduct. The jury returned guilty verdicts on all 44 counts.

James was sentenced to 48 months imprisonment for each count (to run concurrently), followed by 3 years supervised release, and ordered to pay $3,700 in special penalty assessments and $668,647.87 in restitution. Karen was sentenced to 24 months imprisonment on each count (to run concurrently), followed by 3 years supervised release, and ordered to pay $2,200 in special penalty assessments and $295,397.00 in restitution. This timely appeal followed.

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

II.

A.

Appellants first argue there was insufficient evidence to support conviction on any of the charges. Specifically, Appellants argue the Government failed to prove knowing or intentional mens rea, a requirement for each charge. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Yarrington, 634 F.3d 440, 449 (8th Cir. 2011) (quotation omitted). We will affirm the verdict "if any rational jury could have found the defendant guilty beyond a reasonable doubt." United States v. Ojeda-Estrada, 577 F.3d 871, 874 (8th Cir. 2009). "Decisions regarding credibility of witnesses are to be resolved in favor of the jury's verdict." United States v. Gabe, 237 F.3d 954, 961 (8th Cir. 2001) (quotation omitted).

1.

In Counts 1 through 9, Appellants were charged with theft of funds from the SSA and VA, 18 U.S.C. §§ 2, 641; concealment of a material fact as to Social Security funds, 42 U.S.C. § 408(a)(4); conspiracy to defraud the government, 18 U.S.C. § 371; and obtaining Title IV funds (i.e. DOE Pell Grants) by fraud and false statement, 20 U.S.C. § 1097(a), 18 U.S.C. § 2.[2] Appellants argue there was insufficient evidence to establish the requisite mens rea, knowing or intentional conduct, required for all these charges. We disagree.

---

[2]James was charged alone in Counts 2 and 3 (concealment of a material fact as to Social Security funds and theft of VA funds). James and Karen both were charged in Count 1 and Counts 4 through 9 (theft of SSA funds, conspiracy, and obtaining Title IV funds by fraud or false statement).

"Intent frequently cannot be proven except by circumstantial evidence; the determination often depends on the credibility of witnesses, as assessed by the factfinder." United States v. Henderson, 416 F.3d 686, 692 (8th Cir. 2005). The jury may infer intent from the Appellants' conduct, such as inconsistencies between Appellants' representations to government agencies and other entities. See id. (finding intent to defraud SSA where defendant's statements were inconsistent, such as telling SSA she had 4 to 5 migraines a week but telling her cosmetic surgeon she had only 1 to 2 a month). "An issue, like knowledge, that turns in large part on the credibility of the witnesses is peculiarly within the province of the factfinder." United States v. Erdman, 953 F.2d 387, 390 (8th Cir. 1992).

Here, the Government provided evidence of a variety of inconsistent statements made by Appellants. For example, James represented to the Board that he was a practicing accountant from 1974 through at least 2007 and also told an IRS agent in 2007 that he had been working as an accountant for the preceding ten years. However, James regularly reported to the SSA and the VA during the same time period that he could not and did not work at all. Although James suggests there are innocent reasons for these inconsistencies (i.e., good-faith misinterpretations of the agencies' definitions of "work"), a reasonable jury could have disregarded James's explanation and found these inconsistencies evidenced knowing and/or intentional theft of Social Security and VA funds, as well as knowing or intentional concealment of a material fact (i.e., James's ability to work) from the SSA.

Likewise, sufficient evidence supports Appellants' convictions for obtaining Title IV funds (i.e., Pell Grants) by fraud and false statement. Although Appellants had been married for several years in 2005, James used "single" as his filing status for that year. An IRS agent testified that James reported using this filing status to "facilitate his wife [Karen] with her Pell grant applications." Trial Tr. 117. Karen also misrepresented her marital status in applications for federal student aid for her daughters, repeatedly filing as either Head of Household or divorced/separated, even

though witnesses testified James and Karen were never separated and never lived apart during the relevant period. Further, for the 2005-2006 school year, Karen submitted a tax return, prepared by James, to one university that was different from the tax return she submitted to the IRS that year. Although Appellants suggest these were errors made in good faith due to confusing student aid regulations, the jury did not have to credit this defense. Appellants' conduct, including falsely reporting their marital status and making inconsistent representations to the IRS and various schools, provided sufficient evidence for the jury to infer the requisite criminal intent. Cf. United States v. Ross, 77 F.3d 1525, 1547 (7th Cir. 1996) (finding sufficient evidence for §1097(a) conviction where Appellants "intentionally falsified documents and lied to students in order to fraudulently obtain more money than they were entitled to").

Finally, there was sufficient evidence to support the charge of conspiracy to defraud the government. "To convict a defendant of conspiracy, the government must prove that there was an agreement to achieve an illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became part of that agreement." United States v. Jenkins-Watts, 574 F.3d 950, 959 (8th Cir. 2009). As noted above, there was testimony that James used a false marital status to aid Karen's application for federal student aid for her daughters. Further, James prepared at least one of the fraudulent tax returns that Karen submitted in support of her application for federal student aid. There was also evidence that Karen submitted false representations to the SSA on behalf of James. A reasonable juror could conclude from this evidence that Appellants knowingly joined in agreements to misrepresent their marital status to support Karen's application for student aid, and to provide false representations to the SSA regarding James's ability to work. This is sufficient to support Appellants' conspiracy conviction. See United States v. Boesen, 491 F.3d 852, 858 (8th Cir. 2007) (finding evidence sufficient to infer conspiracy when defendant, acting as office manager for his physician brother, submitted medical billing codes to insurance companies when both knew codes were unjustified).

2.

In Counts 10 through 15, Appellants were both charged with filing false tax returns for the tax years 2003, 2004, and 2005, in violation of I.R.C. § 7206(1). Section 7206(1) prohibits a defendant from "[w]illfully mak[ing] and subscrib[ing] any return, statement, or other document . . . which he does not believe to be true and correct as to every material matter." Again, Appellants argue they did not possess the requisite criminal intent. We disagree.

"Willfulness in a criminal tax case may be established by a consistent pattern of not reporting income." United States v. Schaefer, 4 F.3d 679, 681 (8th Cir. 1993). Here, the Government presented evidence that James regularly under-reported his income to the IRS. For example, in 2003 James filed as a "single" taxpayer with income of approximately $10,000. In the same year, James submitted false documentation to Liberty Bank, which provided financing for James's accounting business, indicating that James filed as "married filing jointly" with an income of approximately $160,000. Similar under-reporting or inconsistent reporting of income occurred in 2004, where James under-reported BML's corporate income by $100,000, which flowed through to Appellants' individual tax return, and also in 2005, where James reported inconsistent corporate income to a financing bank for BML and to the IRS and also under-reported personal rental income. A reasonable juror could find willful tax fraud based on this pattern of not reporting or inconsistently reporting income.

The Government also presented evidence of consistent errors in Karen's tax returns. In 2003 and 2005, she filed tax returns using an improper "Head of Household" filing status and also improperly stated her income in order to claim an undeserved Earned Income Tax Credit. Further, in 2004, Karen and James filed a joint tax return that substantially understated their income, and thus resulted in a substantial under-assessment of their income tax. And as noted earlier, a Government

witness testified that James indicated he and Karen manipulated their filing status in order to obtain Pell Grants for Karen's daughters. Taken together, this pattern of false reporting of status and improper reporting of income by Karen could have lead a reasonable juror to find willful tax fraud.

3.

Finally, in Counts 16 through 44, Appellants were charged with numerous instances of fraudulent conduct as tax preparers, a violation of I.R.C. § 7206(2).[3] Section 7206(2) has three essential elements: "(1) the defendant aided, assisted, procured, counseled, advised or caused the preparation and presentation of a return; (2) the return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful." United States v. McLain, 646 F.3d 599, 604 (8th Cir. 2011) (quotation omitted), cert. denied, 132 S. Ct. 1763 (2012). Again, Appellants only challenge whether their action was willful.

"'Willful' requires proof of a specific intent to do something which the law forbids; more than a showing of careless disregard for the truth is required." United States v. Kouba, 822 F.2d 768, 773 (8th Cir. 1987) (quotation omitted). But willfulness can be demonstrated circumstantially, such as by showing a pattern of inflated deductions for clients. See id.; see also United States v. Goosby, 523 F.3d 632, 637 (6th Cir. 2008) ("[T]he similarity in the type of false deductions claimed on most of the tax returns is strong circumstantial evidence that the defendant willfully submitted tax returns containing false statements."). Here, the evidence showed that James, and to a lesser extent Karen, consistently over-reported income for clients filing as individuals, resulting in artificially high Earned Income Tax Credits for the taxpayers. Similarly, for corporate clients and business owners, James consistently

---

[3]Karen alone was charged in Counts 16, 20, 23, 25, 26, 28, and 29. James alone was charged in Counts 17-19, 24, 27, and 30-44. Appellants were both charged in Counts 21-22.

misreported the corporation's rental expenses and the owner's personal business income, resulting in artificially low tax liabilities for these clients. Each of these taxpayer and taxpayer representatives denied providing false information to Appellants or asking Appellants to provide false information to the IRS. A reasonable juror could have found willful conduct by Appellants in these consistent patterns of misrepresentation.

B.

Appellants also argue, for the first time on appeal, that they were prejudiced by being joined for trial. Appellants acknowledge their failure to object and concede plain error review, see United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011) (standard of review), but nonetheless argue that both Appellants were clearly prejudiced by the joinder. We disagree.

To properly join defendants for trial, the indictment must allege that the defendants "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "It is not necessary that all defendants be charged in each count," and "[t]he prerequisites for joinder are liberally construed in favor of joinder." United States v. Liveoak, 377 F.3d 859, 864 (8th Cir. 2004) (quotation omitted). Here, Appellants were indicted for a series of related fraudulent actions and were alleged to have participated in a cooperative scheme to defraud various federal agencies. Although there was not overlap on every charge, a complete overlap is not necessary for joinder to be proper. See id. at 864-65 (finding joinder proper where appellant was one member of a multi-party health care fraud conspiracy). Nor have the Appellants alleged that any potential error "seriously affects the fairness, integrity, or public reputation of [these] judicial proceedings," as plain error requires. See Poitra, 648 F.3d at 887. Thus, we conclude the district court did not err, much less plainly err, in joining Appellants for trial.

C.

Appellants raise several additional arguments.[4] First, Appellants suggest in their opening brief that the district court erroneously excluded expert witnesses for the defense. Appellants do not specify, however, which witness(es) or what testimony was improperly excluded, or where in the transcript we could look to review the exclusions. Appellants provide some additional specification in their Reply Brief, where they argue that Ed Daniel, an attorney who testified for the defense, should have been allowed to discuss the standard of conduct for tax preparers, as discussed in IRS Circular 230. The district court prohibited such testimony, finding it irrelevant. See Trial Tr. 1254-57. Assuming that Appellants refer to the exclusion of testimony offered by Daniel, and reviewing for abuse of discretion, see Harris v. Chand, 506 F.3d 1135, 1139 (8th Cir. 2007) (standard of review), we do not find error in the district court's decision. As the lower court noted, Circular 230 would only be relevant if the Government alleged, or Appellants raised as a defense, that Appellants relied on misrepresentations from their tax clients when filing the false returns. But no such defense was raised, and no such evidence was produced by Appellants. The standard of care for preparing a tax return was simply not relevant to Appellants' intent to defraud, and so it was not error for the district court to limit Daniel's testimony.

Second, Appellants suggest the district court erroneously denied their proffered "good faith" jury instruction. Appellants raise this argument for the first time in their

[4]Appellants mention a "regulatory limitations period" in the Issues Presented section of their opening brief, see Br. of App. ix, but do not actually brief this issue. Thus, we consider this issue abandoned. See Meyers v. Starke, 420 F.3d 738, 743 (8th Cir. 2005) ("To be reviewable, an issue must be presented in the brief with some specificity. Failure to do so can result in waiver.").

-11-

reply brief, and "we do not generally consider new arguments raised in a reply brief." United States v. Vincent, 167 F.3d 428, 431 (8th Cir. 1999). However, even if we were to review for abuse of discretion, see United States v. Gill, 513 F.3d 836, 847 (8th Cir. 2008) (standard of review for rejection of proposed instruction), this argument would fail. The district court did instruct the jury on good faith, see Clerk's R. at 97, and Appellants offer no reason why the district court's instruction was inadequate. Taken as a whole, the district court's instructions "fairly and adequately" submitted the issue of good faith to the jury, see United States v. Renner, 648 F.3d 680, 686 (8th Cir. 2011), and so it was not error to reject Appellants' proffered good faith instruction.

Lastly, Appellants argue the Government did not adequately demonstrate how restitution was calculated. Again, this argument arises for the first time in Appellants' Reply Brief, and so we generally would not consider it. See Vincent, 167 F.3d at 431. However, even if we were to review this issue, Appellants offer no explanation of how they believe restitution was incorrectly calculated, even though restitution was extensively discussed during the sentencing phase. Since Appellants provide no basis for us to reverse or amend the restitution order, we conclude that the district court's restitution calculation was not erroneous.

III.

Accordingly, we affirm.

_____